[Civ. No. 40524. Second Dist., Div. Five. June 29, 1973.]

FOUNT WIP, INC., Plaintiff and Respondent, v.
EDWIN GOLSTEIN, Defendant and Appellant.

## COUNSEL

Rich & Ezer and Mitchel J. Ezer for Defendant and Appellant.

Elstein, Spector, Richland & Buter and Robert N. Richland for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—Defendant appeals from the Los Angeles County Superior Court's order denying his motion to set aside a default judgment.

On May 18, 1968, one Jack W. Soffer died, and his will was admitted to probate in Los Angeles County Superior Court. Defendant, a Florida resident, was a residuary legatee under the Soffer will.

On June 17, 1968, before distribution of the Soffer estate, defendant assigned to his wife his interest in that estate. Thereafter, defendant's wife instituted divorce proceedings against defendant in Florida, and on April 18, 1969, defendant's wife was granted a final judgment of divorce.

On May 15, 1969, plaintiff (Fount Wip, a California corporation) filed a complaint for money in Los Angeles County Superior Court, naming as defendants: Fount Wip Southeast Company, a Missouri corporation (hereinafter, Southeast) and Edwin Golstein (hereinafter, defendant) as guarantor in writing of Southeast's obligations.[1] On that same day, plaintiff applied for an order for publication of summons of Southeast and defendant. The applications for publication of summons were made on the ground that Southeast and defendant were residents of Florida, and the applications were supported by the following declaration of plaintiff's president, Z. L. Lapin: "On or about February 18, 1969, your declarant confirmed, by contacting the telephone information operator in the City of Miami Beach, Florida, that the residence of [defendant], who is the President of [Southeast], is 500 N.E. 178th Street, North Miami Beach, Florida." The applications for publication were presented to Los Angeles County Court Commissioner Edward J. Cox. The application for publication of summons of Southeast was properly filed, but, through inadvertence, the application for publication of summons of defendant was not filed.[2] Cox, however, did read both applications and thereupon issued an order for publication of summons of both Southeast and defendant.[3] The Cox order further directed that defendant and Southeast be mailed copies of the summons and complaint, but did not designate the name of the person who was to do the mailing.

On July 23, 1969, plaintiff applied for a second order for publication of summons of defendant, but did not make a second application as to Southeast. The application was again made on the ground that defendant was a Florida resident, and the application was supported by the following declaration of one Robert N. Richland: "On or about July 14, 1969, your declarant contacted the telephone operator in the City of North Miami Beach, Florida, and was informed by her that [defendant] resides at 500 N. E. 178th Street, North Miami Beach, Florida, telephone number 947-

[1] The first count alleged a breach by Southeast of a contract which defendant had guaranteed; $29,890 in damages were sought. In the second count, plaintiff set forth a cause of action against Southeast under a Florida judgment in the amount of $4,649.24; defendant was joined as the guarantor.

[2] One Michael Buter was the person who presented the applications to Cox. By a declaration executed on April 23, 1971, Buter declared that on May 15, 1969, he delivered the applications to Cox, but Cox "had retained the original of the Application for Order for Publication of summons on [Southeast], and had inadvertently returned and failed to file the original Application for Order for Publication of Summons on [defendant]."

[3] By a declaration executed by Cox on April 26, 1971, Cox declared that on May 15, 1971 (Cox apparently meant 1969), Buter delivered to him the applications for publications of summons of both Southeast and defendant, and Cox "read the respective Applications submitted" and thereafter issued the order of publications.

2594." Richard, however, did not sign his declaration. Nonetheless, Los Angeles County Court Commissioner Jacqueline L. Weiss issued an order for publication of summons of defendant and also issued an order for publication of summons of Southeast. The Weiss order further directed one M. B. Kelly to mail a copy of the complaint and summons to defendant and Southeast.

On August 14, 1969, a "Declaration of Publication" was filed. The declaration represented that publication of summons on defendant and Southeast was made on July 24, July 31, August 7, and August 14, 1969.

On August 22, 1969, M. B. Kelly filed a declaration of having mailed copies of the complaint and summons to defendant and Southeast.

On October 23, 1969, plaintiff attached whatever interest defendant held in the Soffer estate.

On February 20, 1970, a default was entered in favor of plaintiff and against defendant and Southeast on the ground that defendant and Southeast had "been duly served with summons in the manner required by law, to wit: Publication of Summons and service by mail. . . ."

Plaintiff then caused Southeast to be dismissed as a defendant, and on March 10, 1970, judgment was entered on the default (hereinafter the default judgment). The default judgment expressly provided, however, that "EXECUTION OF THIS JUDGMENT TO BE LEVIED ONLY ON PROPERTY HERETOFORE ATTACHED."[4]

Plaintiff thereafter obtained a writ of execution and levied on defendant's interest in the Soffer estate. On February 19, 1971, however, defendant's wife filed with the Sheriff of Los Angeles County a third party claim to defendant's interest in the Soffer estate (Code Civ. Proc., § 689), and, as a consequence, on February 26, 1971, plaintiff instituted litigation against defendant's wife in Los Angeles County Superior Court in order to determine title to defendant's interest (hereinafter the title action).

Before the determination of the title action, however, defendant made a motion in Los Angeles County Superior Court to set aside the judgment and default, to quash the writ of execution, and to quash the levy. Defendant's ground for his motion was that the unsigned Richland declaration was insufficient to support the Weiss order for publication of summons, and therefore the default judgment was void for lack of jurisdiction. On April 27, 1971, plaintiff moved for a "Nunc Pro Tunc filing of the [May 15, 1969] Application of Z. L. LAPIN for Order of Publication of Summons on [defendant]," and on May 6, 1971, plaintiff filed a "Declaration in Op-

---

[4]This judgment was entered by Harold V. Boisvert, Judge pro. tem.

position to Motion to Vacate Judgment." On May 7, 1971, defendant filed a "Memorandum of Points and Authorities in Opposition to Motion for Order Directing Nunc Pro Tunc Filing of the Application of Z. L. Lapin." On May 10, 1971, defendant's motion to set aside the default judgment and plaintiff's motion for a *nunc pro tunc* filing came up for hearing, but on defendant's motion, the hearing was continued. On June 2, 1971, the motions were heard: plaintiff's motion for a *nunc pro tunc* filing was granted, and defendant's motion to set aside the default judgment was submitted. On July 2, 1971, defendant's motion to set aside the default judgment was denied.

Thereafter, on August 9, 1971, the title action between plaintiff and defendant's wife reached judgment, and Los Angeles County Superior Court held "that title of [defendant's] interest . . . in the Estate of . . . Soffer . . . has at all times since June 17, 1968, and specifically at the times it was levied on under the above-mentioned writs of attachment and execution was vested in [defendant's wife], the third-party claimant."[5]

On August 23, 1971, defendant filed notice of appeal from the denial of his motion to vacate the default judgment, and it is this appeal that we here consider.

On appeal, defendant contends that the trial court erred in refusing to set aside the default judgment for lack of jurisdiction. In general, defendant alleges a lack of jurisdiction in the default action because 1) plaintiff made no valid publication of summons in that action,[6] and because

---

[5]This judgment was upheld on appeal in *Fount-Wip, Inc.* v. *Golstein* (1972) 29 Cal.App.3d 751 [105 Cal.Rptr. 780] (hg. den., Feb. 22, 1973).

[6]Specifically, defendant argues that both the Cox and Weiss orders for publication of summons were defective.

In regard to the Cox order, defendant makes the following assertions: 1) the Cox order violated then existing superior court rule 11 because Cox failed to name in his order the person who was to mail the summons and complaint to defendant; 2) the Cox order further violated then existing rule 11 because that rule requires that the complaint and summons be mailed within 20 days following the order, and the summons and complaint were not in fact mailed until 70 days following the order; 3) the Cox order was defective in that it was founded upon the Lapin declaration, and the Lapin declaration was not properly filed; 4) the court's *nunc pro tunc* filing of the Lapin declaration could not cure the void default judgment because a void judgment is not possible of being cured retroactively; 5) even if the *nunc pro tunc* filing of the Lapin declaration did cure the void default judgment, the court committed an abuse of discretion in making the *nunc pro tunc* order; 6) the Cox order could not be upheld on the basis of the Lapin declaration because the Lapin declaration was improperly founded upon hearsay.

In regard to the Weiss order, defendant makes these assertions: 1) the Weiss order could not be upheld on the basis of the Lapin declaration because then existing rule 11 required that "[f]acts alleged as to the residence of the defendant or as to the investigation of his whereabouts must be of recent occurrence, that is, within a period

2) defendant held no interest in the Soffer estate at the time that plaintiff attached that estate.

██ We need not consider the validity of the publication, however, for we agree that no jurisdiction was obtained over defendant as a consequence of the attachment of the Soffer estate.

The jurisdiction over defendant in entering the default judgment was quasi in rem.[7] ██ However, "[i]t is essential to this kind of jurisdiction that [some] property [of defendant's] be actually subjected to the court's control *before* judgment, by such procedure as attachment, garnishment or receivership." (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 150 at p. 678.) ██ Prior to the default judgment, plaintiff attempted to subject property of defendant to the court's control by attaching whatever interest defendant held in the Soffer estate. Prior to plaintiff's attachment, however, defendant had assigned his interest in the Soffer estate to his wife. In *Fount-Wip, Inc.* v. *Golstein,* 29 Cal.App.3d 751 [105 Cal. Rptr. 780], the court held that defendant's wife owned defendant's interest in the Soffer estate at the time of plaintiff's attachment: "The theory is that a creditor can levy effectively only on the debtor's present interest; if the debtor has none because he has assigned that interest to another, there is nothing for the creditor to reach." (*Id.* at p. 757.) Therefore, since defendant held no interest in the Soffer estate at the time that plaintiff attached that estate, then no jurisdiction was obtained over defendant as a consequence of the attachment.

Plaintiff argues, however, that at the time that defendant moved the court to set aside the default judgment, defendant committed certain acts that exposed defendant to the personal jurisdiction of the court, and that that personal jurisdiction then related back to cure any defect in jurisdiction that may have existed at the time that the judgment was entered. Specifically, plaintiff argues that at the time that defendant moved to set aside the default judgment, defendant did not confine himself to a special appearance on the issue of jurisdiction, but, instead, by defendant's motion to quash the writ of execution, by defendant's motion to quash the

---

of not more than 90 days prior to the filing of the application," and although the Lapin declaration shows that Lapin's investigation was within the 90-day period (86 days) prior to the declaration's *nunc pro tunc* filing, nonetheless, the "spirit" of rule 11 was violated because the Weiss order was not made until 155 days after the Lapin investigation; 2) the Weiss order could not be upheld on the basis of the Richland declaration because that declaration was not signed; 3) the Weiss order could not be upheld on the basis of the Lapin or Richland declarations because both of those declarations were improperly founded upon hearsay.

[7]The record contains no allegation of any other form of jurisdiction over defendant, and the default judgment specifically provides that execution of the judgment was "to be levied only on property heretofore attached."

levy of execution, by defendant's motion for a continuance, and by defendant's opposition to plaintiff's motion for a *nunc pro tunc* filing, defendant thereby raised issues other than jurisdiction and therefore entered a general appearance and exposed himself to the personal jurisdiction of the court.

In California, of course, it is true that a defendant's general appearance after entry of judgment will be deemed to have cured retroactively any defect in personal jurisdiction that existed at the time of judgment. (*Farmers etc. Nat. Bk.* v. *Superior Court,* 25 Cal.2d 842, 846 [155 P.2d 823]; 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, General Appearance After Entry of Judgment, § 131, pp. 659-660; Lurvey, *The Dilemma of Retroactivity,* 19 Hastings L.J. 541, 545-548.) However, even if we assume arguendo that defendant did not confine himself to a special appearance on the issue of jurisdiction, we hold, nonetheless, that defendant did not enter a general appearance and did not expose himself to the personal jurisdiction of the court: "If, in a proceeding begun by attachment . . . in a court which has no jurisdiction over the defendant, he enters an appearance for the purpose of contesting the validity of the plaintiff's claim, he does not thereby subject himself personally to the jurisdiction of the court . . . ."[8] (Rest., Judgments (1942) § 40; *Cheshire National Bank* v. *Jaynes,* 224 Mass. 14 [112 N.E. 500]; Smit, *International Res Judicata and Collateral Estoppel in the United States,* 9 U.C.L.A. L.Rev. 44, 60-61, 70-71; Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,* 9 Stan.L.Rev. 281, 303-304.)

Therefore, since we hold that defendant did not expose himself to the personal jurisdiction of the court, then the default judgment cannot be deemed to be a personal judgment against defendant.[9] Likewise, the default judgment cannot be deemed to be a quasi in rem judgment, because defendant did not have any interest in the property upon which the quasi in rem action was founded. The default judgment, then, may be supported upon neither personal jurisdiction, nor quasi in rem jurisdiction, and therefore must be set aside for lack of jurisdiction.

The case is remanded for further proceedings consistent with the views expressed herein.

Kaus, P. J., and Hastings, J., concurred.

---

[8]The results of *Hodgkins* v. *Dunham* (1909) 10 Cal.App. 690 [103 P. 351] and *Nisbet* v. *Clio Mining Company* (1905) 2 Cal.App. 436 [83 P. 1077] may be inconsistent with this view, in which case we do not follow them.

[9]Even if we were to hold that the default judgment were a valid judgment founded upon personal jurisdiction over defendant, the judgment itself limits execution to property in which defendant held no interest.