[Civ. No. 48380. First Dist., Div. One. Aug. 31, 1982.]

In re the Marriage of SANDRA MARY and
LELAND RITCHIE SMITH.
SANDRA MARY SMITH, Appellant, v.
LELAND RITCHIE SMITH, Respondent.

## COUNSEL

William M. Kirkpatrick and Kouns & Marshall for Appellant.

P. John Mancuso and Mancuso & Mancuso for Respondent.

## OPINION

GOFF, J.*—In this opinion we hold that a defendant who was defectively served with summons did not make that service retroactively valid by entering a general appearance after judgment was entered.

We also reiterate that Code of Civil Procedure (all code references are to this code) section 473.5 does not govern a motion to set aside a default founded upon a fraudulent return of service.[1]

The relevant factual background is quite simple. Sandra Smith filed a petition to dissolve her marriage to Leland Smith. Contrary to law,[2] Sandra herself handed the summons and petition to Leland. Sandra's mother executed the return of service filed with the clerk. Leland's default was entered and the court granted Sandra an interlocutory decree and later a final decree of dissolution. The decrees ordered Leland to make child support payments to Sandra.

Five months later, Sandra filed a notice of motion to increase child support payments and obtained an order directing Leland to show cause why he should not be held in contempt for failure to obey the child support orders previously made. She had these properly served upon Leland. Leland filed a motion to quash the service of summons upon him and to set aside his default and the interlocutory and final judg-

---

*Assigned by the Chairperson of the Judicial Council.

[1]*Sullivan* v. *Sullivan* (1967) 256 Cal.App.2d 301 [64 Cal.Rptr. 82].

[2]Section 414.10.

ments. Leland's attorney appeared in court on the date set for Sandra's motions and requested a continuance in order to prepare defenses to *both* motions. The court granted the continuance. Leland's attorney also noticed and took Sandra's deposition and served notice of taking the deposition of the custodian of Sandra's employment records pursuant to a subpoena duces tecum.

The trial court granted Leland's motion to quash service of summons upon him and set aside Leland's default and the interlocutory and final judgments of dissolution. Sandra appeals from this order, contending:

1. Leland's request for a continuance of Sandra's motion to increase support, his taking her deposition, and noticing the custodian's deposition pursuant to a subpoena duces tecum each were acts constituting a general appearance which retroactively made valid the defective service of summons upon Leland.

2. The superior court had a constitutionally proper basis of jurisdiction over Leland pursuant to section 410.10[3] because Leland's general appearance was a consent to the court's jurisdiction over his person from the time of the defective attempt to serve him with summons or, alternatively, a waiver of his right to have the service declared void.

3. Section 473.5 bars Leland's motion to quash because the service of summons, although void, gave Leland actual notice of the pendency of the suit.

We conclude California's Jurisdiction and Service of Process Act of 1969 preempted the subjects of jurisdiction and service of process and clearly rejected the rule that a defendant's general appearance after entry of a default judgment against him based upon a void service of summons retroactively makes valid that void service.

We also conclude that the term "basis" in reference to jurisdiction in section 410.10 does not refer to the service of process or notice and therefore section 410.10 does not support Sandra's second contention.

We reiterate that section 473.5 does not govern a default or default judgment obtained through a fraudulent return of service of summons.

---

[3]Section 410.10 provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

## The Waiver Rule and the Retroactive Validity
## of Void Service of Summons

That Leland's request for a continuance to defend against Sandra's support motion was a general appearance is not contested. (See *Zobel* v. *Zobel* (1907) 151 Cal. 98 [90 P. 191].) Sandra relies upon *Farmers, etc. Nat. Bk.* v. *Superior Court* (1945) 25 Cal.2d 842 [155 P.2d 823], for the rule that: "[A] general appearance made after entry of judgment has the effect of curing any defect arising from the lack of jurisdiction due to the failure to serve or notify a person of the proceedings [citations], and a judgment based upon such an appearance is valid." (*Id.*, at pp. 846-847.) This seems to have been the judge-made rule in California at that time and although it was stated in *Farmers* and in five other California cases, it was necessary to the court's decision only in *Security etc. Co.* v. *Boston etc. Co.* (1899) 126 Cal. 418 [58 P. 941][4] (hereafter *Security*).

Inasmuch as the rule in *Security* is vital to our consideration of the case at bar, we shall examine *Security* and the history of the rule upon which Sandra relies.

In *Security* plaintiff served the nonresident defendant by publication, took its default and judgment, and sold certain property pursuant to the judgment. Defendant filed a special appearance, moving to quash service of summons on the hypertechnical ground that the affidavit supporting service by publication omitted to mention that defendant had no agent for service of process in California. Another asserted ground was that the complaint failed to state a cause of action. The trial court denied defendant's motion. The Supreme Court held (at p. 422) that the asserted ground, failure to state a cause of action, constituted a demurrer and general appearance, resulting in "'a submission to the jurisdiction of the court as completely as if he had been regularly served with process, ...'" citing 2 Encyclopedia of Pleading and Practice, page 625, and affirmed the trial court.

The *Security* court cited four cases to support its position, all of which state the rule quoted. But only one of them, *Burdette* v. *Corgan* (1881) 26 Kan. 102, held that a general appearance *after* judgment deprived defendant of the right to challenge the court's jurisdiction of her

---

[4]Besides *Security*, they are: *Thompson* v. *Alford* (1901) 135 Cal. 52 [66 P. 983]; *Douglass* v. *Pac. M. S. S. Co.* (1854) 4 Cal. 304; *Tolle* v. *Doak* (1936) 12 Cal.App.2d 195 [55 P.2d 542]; and *Shelley* v. *Casa De Oro, Ltd.* (1933) 133 Cal.App. 720 [24 P.2d 900].

person and made personal jurisdiction retroactive to the date of the irregular service.[5]

The authorities relied upon by the court in *Security* demonstrate that the decision is a confluence of two lines of cases: one line holds that a general appearance by an unserved or improperly served defendant is equivalent to personal service so that the court has personal jurisdiction throughout *subsequent* proceedings in the action. The second line holds that a defendant's general appearance, either before or after judgment, retroactively makes valid a defective service of process.

The treatise cited in *Security*, 2 Encyclopedia of Pleading and Practice, at page 625, refers to the first line of cases. It cites *Lowe v. Stringham* (1861) 14 Wis. 241 as the "Reason of the Rule" quoted in *Security*. That reason is to preclude a defendant from litigating an action to a conclusion and later, if dissatisfied, urging lack of personal jurisdiction over him. This "Reason of the Rule" is obviously inapplicable to a case where judgment has already been entered. (See *Mason v. Freeman Nat'l Printing Equip. Co.* (1977) 51 Ill.App.3d 581, 586-587 [366 N.E.2d 1015].)

It seems incongruous that *Security* ignored that section of the cited treatise which discussed the validation of void judgments by subsequent appearance. (See 2 Encyc. P. & P. pp. 655-656.)

The second, or "retroactive waiver," line of cases came to *Security* via *Burdette v. Corgan, supra*, 26 Kan. 102. *Burdette* relied upon four cases for its holding.[6] Only one of them[7] involved defendant's general appearance *after* judgment. But three of them say that a general appearance constitutes a retroactive *waiver* of defects in service of process.[8] A review of these and the numerous other cases in the retroactive waiver line of cases all lead back to *Simonds v. Parker* (1840) 42 Mass. 508. The development of this line of cases illustrates the dangers

[5]*Gilbert-Arnold Land Co. v. O'Hare* (1896) 93 Wis. 194 [67 N.W. 38], quoted in *Security, supra*, at page 422, was dictum on this point. It, too, derived the rule in question via *Alderson v. White* (1873) 32 Wis. 308, which rested in turn upon *Grantier v. Rosecrance* (1871) 27 Wis. 488. (See fn. 7.)

[6]*Cohen v. Trowbridge* (1870) 6 Kan. 232; *Fee v. Big Sand Iron Co.* (1862) 13 Ohio St. 563, *Grantier v. Rosecrance, supra*, 27 Wis. 488, and *Alderson v. White, supra*, 32 Wis. 309.

[7]*Grantier v. Rosecrance, supra*, 27 Wis. 488, 491.

[8]*Cohen v. Trowbridge, supra*, 6 Kan. 232; *Grantier v. Rosencrance, supra*, 27 Wis. 491; *Alderson v. White, supra*, 32 Wis. 309.

of legal categorization and that in law as, "[i]n all aspects of life, ... we define our reality in terms of metaphors and then proceed to act on the basis of the metaphors."[9] In law we speak of "categories" or "concepts" rather than metaphors.

In *Simonds* v. *Parker, supra*, 42 Mass. 508, service on defendant was defective. Nevertheless, defendant demurred, his demurrer was overruled, judgment was entered and defendant appealed.[10] When the case was called for *trial*, defendant moved to quash. The court invoked the doctrine of waiver to hold the motion was not timely. The court observed that waiver is an equitable doctrine requiring diligence and good faith, meant to avoid injustice. The case implies the defendant still had his right to trial.

The waiver metaphor was employed by the Wisconsin Supreme Court which relied on *Simonds* v. *Parker, supra*, 42 Mass. 508, as authority in *Upper Mississippi Transportation Company* v. *Whittaker* (1862) 16 Wis. 233, to hold a general appearance *before* judgment "[w]as an appearance, an unqualified *waiver* of previous defects in the service of process." (*Id.*, at p. 236, italics added.)

*Grantier* v. *Rosecrance, supra*, 27 Wis. 488, appears to be the first case to apply the waiver metaphor to a general appearance *after* default judgment, citing *Upper Mississippi Transportation Company* v. *Whittaker, supra*, 16 Wis. 233; then *Burdette* v. *Corgan, supra*, 26 Kan. 102, relied upon *Grantier*; and then *Security, supra*, 126 Cal. at pages 422-423, relied upon *Burdette*; and here we are—as fine an example as possible of the quotation above concerning metaphors and how unreflecting use of legal concepts leads to unintended results. The rule began as an aid to justice and became one of automatic application, a trap for attorneys who find it difficult to predict safely what the next judge will call a "general appearance,"[11] depriving unwary defendants of "'The fundamental requisite of due process of law ... the opportunity to be

[9]Lakoff and Johnson, Metaphors We Live By (Univ. of Chicago Press, 1980) page 158.
"All cognition, much as it may vary in method and orientation, aims ultimately to subject the multiplicity of phenomena to the unity of a 'fundamental proposition.' The particular must not be left to stand alone, but must be made to take its place in a context, where it appears as part of a logical structure, ..." (1 Cassirer, The Philosophy of Symbolic Forms (Yale Univ. Press 1955) p. 77.)

[10]At that time, an appeal doubtless had its rather ancient meaning, i.e., a demand or request for a trial by jury. See Pollack and Maitland, The History of English Law (2d ed. 1909) pages 618-620.

[11]Cf. *Zobel* v. *Zobel, supra*, 151 Cal. 98, for an example of a shocked defendant.

heard.'"[12] Having lost sight of the purpose of the rule, later cases justify it as necessary to avoid inconsistency. (*Burdette* v. *Corgan, supra*, 26 Kan. 102; *Gilbert-Arnold Land Co.* v. *O'Hare, supra*, 93 Wis. 194.) "The reason which gave rise to the rule has been forgotten, ... Some ground of policy is thought of, which seems to explain it and to reconcile it with the present state of things; and then the rule adapts itself to the new reasons which have been found for it, and enters on a new career." (Holmes, The Common Law (-1963) p. 8.)

Recognizing the rule to be harsh, several California cases have criticized or avoided it.[13] In no case was the issue raised whether the rule of the *Security* case was rejected by the Jurisdiction and Service of Process Act of 1969. But for that Act, we would be governed in this case by the *Security* rule. We requested briefs on this issue and Sandra has responded.

### *The Jurisdiction and Service of Process Act of 1969 Preempted Those Subjects*

In 1969, the California Legislature passed the Jurisdiction and Service of Process Act, Code of Civil Procedure sections 410.10-418.10 (the Act). (See Stats. 1969, ch. 1610, §§ 3-30 and ch. 1611, §§ 1-52, pp. 3363-3406.) The Act was the product of an extensive study by the Judicial Council of California and the Committee on Administration of Justice of the State Bar of California.[14] It constitutes a comprehensive and detailed statutory plan governing jurisdiction, process, and related problems. We conclude that the Legislature preempted the entire area of law relating to these subjects in passing the Act.

■ Section 410.50 provides: "(a) Except as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party from the time summons is served on him as provided by Chapter 4 (commencing with Section 413.10). A general appearance by a party

[12]*Greene* v. *Lindsey* (1982) 456 U.S. 444, 449 [72 L.Ed.2d 249, 254-255, 102 S.Ct. 1874].

[13]*Goodwine* v. *Superior Court* (1965) 63 Cal.2d 481 [47 Cal.Rptr. 201, 407 P.2d 1]; *Forbes* v. *Cameron Petroleums, Inc.* (1978) 83 Cal.App.3d 257 [147 Cal.Rptr. 766]; *Berard Construction Co.* v. *Municipal Court* (1975) 49 Cal.App.3d 710 [122 Cal.Rptr. 825]; *Fount Wip, Inc.* v. *Golstein* (1973) 33 Cal.App.3d 184 [108 Cal.Rptr. 732]; *Batte* v. *Bandy* (1958) 165 Cal.App.2d 527 [332 P.2d 439]; *Bank of America* v. *Carr* (1956) 138 Cal.App.2d 727 [292 P.2d 587].

[14]Li, Attorney's Guide to California Jurisdiction and Process (Cont.Ed.Bar 1970) page iii.

is equivalent to personal service of summons on such party. [¶] (b) Jurisdiction of the court over the parties and the subject matter of an action continues throughout subsequent proceedings in the action."

Because the Act is preemptive, common law rules concerning its subject matter are not a part·of California law. (*Milwaukee v. Illinois* (1980) 451 U.S. 304 [68 L.Ed.2d 114, 101 S.Ct. 1784]; *Isbrandtsen Co. v. Johnson* (1952) 343 U.S. 779 [96 L.Ed. 1294, 72 S.Ct. 1011].) It is also significant that in reenacting the rule that a general appearance is tantamount to personal service of summons, no mention is made in the Act of the common law rule of *Security* that such a general appearance retroactively turns an invalid service into a valid one. Such a rule could easily have been stated. This omission manifests legislative rejection of the rule. (*Consumer Product Safety Comm'n v. GTE Sylvania* (1980) 447 U.S. 102, 109 [64 L.Ed.2d 766, 772-773, 100 S.Ct. 2051]; *Iselin v. United States* (1926) 270 U.S. 245, 251 [70 L.Ed. 566, 569-570, 46 S.Ct. 248]; *Anderson v. I.M. Jameson Corp.* (1936) 7 Cal. 2d 60, 67 [59 P.2d 962].)[15]

Further, Code of Civil Procedure section 410.50 is inconsistent with the waiver rule of *Security* because subdivision (b) specifically states that jurisdiction obtained pursuant to subdivision (a) "continues throughout *subsequent* proceedings in the action." (Italics added.)[16]

The common law rule of *Security* did not rest on section 410.50, subdivision (a) or its antecedent, former section 416.[17] The cases which developed the *Security* rule ignored these sections. The origin and history of the rule are entirely nonstatutory. That courts have frequently

[15]"One more caution is relevant when one is admonished to listen attentively to what a statute says. One must also listen attentively to what it does not say." Frankfurter, *Some Reflections on the Reading of Statutes* (1947) 47 Colum. L.Rev. 527, 536.

[16]Although it is not necessary to this decision, the statutory history of section 410.50 is interesting on this point. The predecessor of section 410.50, former section 416, originally commenced thus: "From the time of the service of the summons and copy of complaint in a civil action, the court is deemed to have acquired jurisdiction, and to have control of all the subsequent proceedings." The sentence: "The voluntary appearance of a defendant is equivalent to personal service of the summons upon him," initially followed immediately (in 1872) but was separated by later amendments. The positioning of the reference to "subsequent proceedings" arguably limited them to the preceding words. "[A] proviso usually is construed to apply to the provision or clause immediately preceding it." (2A Sutherland, Statutory Construction (4th ed. 1973) § 47.33, fn. omitted.) The relocation of the reference to "subsequent proceedings" in section 410.50, subdivision (b) of... the Act unmistakably tells us it includes all of subdivision (a).

[17]Section 416 was enacted on March 11, 1872 (unchaptered).

ignored statutory law has been remarked often by commentators, including Chief Justice Traynor[18] and Roscoe Pound.[19] (See also *Isbrandtsen Co.* v. *Johnson, supra*, 343 U.S. 779, 781 [96 L.Ed. 1294, 1298].) Ergo, it cannot be argued that reenactment in section 410.50, subdivision (a) of the rule that a general appearance is tantamount to service of summons reenacts the *Security* rule.

Since the Legislature has rejected the waiver rule of *Security* without ambiguity, no examination of legislative purpose aside from the statute itself is necessary. (*Diamond* v. *Chakrabarty* (1980) 447 U.S. 303, 315, 318 [65 L.Ed.2d 144, 153, 155, 100 S.Ct. 2204]; *United States* v. *Oregon* (1961) 366 U.S. 643, 648 [6 L.Ed.2d 575, 579, 81 S.Ct. 1278]; *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 353-354 [139 P.2d 908].)

### *"Basis" in Section 410.10 Does Not Refer to Service of Process*

■ Sandra argues that no matter how section 410.50 is construed, section 410.10 provides sufficient statutory authority for the retroactive waiver rule in *Security*. Section 410.10 provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

She contends:

1. A general appearance is either a consent to jurisdiction or a waiver of any objection to jurisdiction; and

2. "There is nothing unconstitutional about a person consenting to the jurisdiction of a court or waiving complaints against the jurisdiction of the court."

The word "basis" has several uses. One common use refers to relationships between things or individuals. This use is consistent with Sandra's position that the relationship between a court and a defendant is any constitutionally proper relationship the court designates, including the court's power to declare retroactively valid a void attempt to serve a summons on defendant upon defendant's general appearance.

But this is not the use which lawyers, judges, teachers, and legislators have made of "basis" in reference to the jurisdiction of courts. They use

[18]*Statutes Revolving in Common-Law Orbits* (1968) 17 Cath. U.L.Rev. 401, 426.
[19]*Common Law and Legislation* (1908) 21 Harv. L.R. 383.

it to refer to the relationship between a court and persons, entities, or things a court may seek to bring before it. Thus, if a "basis of jurisdiction" exists between a court and a defendant, the court may bring that defendant within its authority and thereafter make orders binding upon that defendant.[20] "Contacts" is used in *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], synonymously with "basis of jurisdiction." The process by which a court brings the defendant within its power is another subject, usually discussed under the heading "Notice." This distinction is clearly made by Professor Horowitz: "Due process requirements of notice and opportunity to be heard should be carefully distinguished from due process requirements of basis of jurisdiction. If there is no constitutionally adequate basis of jurisdiction for a court to grant a plaintiff the specific judgment he seeks against the defendant it will make no difference if the defendant has been given notice and opportunity to be heard."[21] These subjects are considered in different articles of the Act[22] and in different sections of Restatement Second, Conflict of Laws,[23] and Witkin, California Procedure 2d.[24]

In the case at bar, there is no issue surrounding the superior court's basis of jurisdiction over Leland. The issue before us involves the effectiveness of the service by Sandra of summons upon him, i.e., whether

---

[20]For examples of this use of "basis of jurisdiction," see *Insurance Corp.* v. *Compagnie de Bauxites* (1982) 456 U.S. 694, 695-697, 714-716 [72 L.Ed.2d 492, 497, 509, 102 S.Ct. 2099]; *Kulko* v. *California Superior Court* (1978) 436 U.S. 84, 93, 97 [56 L.Ed.2d 132, 142, 144, 98 S.Ct. 1690]; *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228] ("The basis of the jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum State," p. 246 [2 L.Ed.2d at p. 1293]); *Milliken* v. *Meyer* (1940) 311 U.S. 457 [85 L.Ed. 278, 61 S.Ct. 339, 132 S.Ct. 1357] (p. 463 [85 L.Ed. at p. 283]: "Certainly then Meyer's domicile in Wyoming was a sufficient basis for that extraterritorial service"); *Kulko* v. *Superior Court* (1977) 19 Cal. 3d 514, 521 [138 Cal.Rptr. 586, 564 P.2d 353] (rev. on other grounds by *Kulko* v. *California Superior Court, supra*, 436 U.S. 84); *Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296, 302 [118 Cal.Rptr. 548]; Restatement-Second, Conflict of Laws, sections 24-78, pages 105-236; Gorfinkel & Lavine, *Long-Arm Jurisdiction in California Under New Section 410.10 of the Code of Civil Procedure* (1970) 21 Hastings L.J. 1163.

[21]Horowitz, *Bases of Jurisdiction of California Courts to Render Judgments Against Foreign Corporations and Non-Resident Individuals* (1958) 31 So.Cal.L.Rev. 339, 341, footnote 6. See also: Restatement Second, Conflict of Laws, section 25, page 109.

[22]Code of Civil Procedure part 2, title 5, chapter 1, articles 1 and 3, respectively.

[23]Sections 27 and 126, respectively.

[24]1 Witkin, California Procedure (2d ed. 1970) Jurisdiction, sections 85-141, pages 610-669, and sections 78-84, pages 603-609, respectively.

his later general appearance converted an invalid service into a valid one. We conclude, therefore, that section 410.10 does not empower a court to employ the *Security* rule.

A second and independent reason for rejecting Sandra's argument regarding the effect of section 410.10 is the rule that a statute must be interpreted, where possible, to give effect and consistency to all of its parts. (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935]; *Estate of McDill* (1975) 14 Cal.3d 831, 836 [122 Cal.Rptr. 754, 537 P.2d 874].) To give effect to Sandra's argument would be inconsistent with our conclusion that section 410.50 is contrary to the rule in *Security*. It would also render section 410.50, subdivision (b) meaningless and the specific rules regulating the service of process redundant.

### *Code of Civil Procedure Section 473.5 Is Not Applicable to Acquisition of Jurisdiction by Fraud*

■ Sandra argues that Leland's motion to quash service of summons is barred by section 473.5[25] for two reasons:

(1) Former section 411 was replaced by section 410.10 which provides that jurisdiction attaches on any constitutional basis.

(2) Leland had actual notice of the proceedings.

Point (1) is answered by our foregoing analysis of section 410.10.

---

[25]Section 473.5 provides: "(a) When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him in such action, he may serve and file a notice of motion to set aside such default or default judgment and for leave to defend the action. Such notice of motion shall be served and filed within a reasonable time, but in no event exceeding the earlier of: (i) two years after entry of a default judgment against him; or (ii) 180 days after service on him of a written notice that such default or default judgment has been entered. [¶] (b) A notice of motion to set aside a default or default judgment and for leave to defend the action shall designate as the time for making the motion a date not less than 10 nor more than 20 days after filing of such notice, and it shall be accompanied by an affidavit showing under oath that such party's lack of actual notice in time to defend the action was not caused by his avoidance of service or inexcusable neglect. The party shall serve and file with such notice a copy of the answer, motion, or other pleading proposed to be filed in the action. [¶] (c) Upon a finding by the court that the motion was made within the period permitted by subdivision (a) and that his lack of actual notice in time to defend the action was not caused by his avoidance of service or inexcusable neglect, it may set aside the default or default judgment on such terms as may be just and allow such party to defend the action."

Argument (2) fails because section 473.5 refers only to persons upon whom service was *made* or attempted and who did *not* have actual notice of the pendency of the action. Clearly, Leland could not move to set aside his default under this section and he did not rely upon it. Leland correctly relies upon *Sullivan* v. *Sullivan, supra*, 256 Cal.App.2d 301, footnote 1, for the proposition that a court has inherent power to set aside a judgment obtained by fraud upon it.[26] In this action, as in *Sullivan*, the fraud consisted in filing a false return of service, executed in this case by Sandra's mother.

The order from which Sandra appealed is affirmed. Each party shall bear his or her own costs.

Racanelli, P. J., and Grodin, J.,* concurred.

---

[26]See also *Kass* v. *Young* (1977) 67 Cal.App.3d 100, 105 [136 Cal.Rptr. 469]; *In re Marriage of Coffin* (1976) 63 Cal.App.3d 139, 149 [133 Cal.Rptr. 583].

*Assigned by the Chairperson of the Judicial Council.