Filed 4/26/16  County of San Diego v. Irby CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| COUNTY OF SAN DIEGO, Plaintiff and Respondent, v. ERNEST JAY IRBY, Defendant and Appellant. | D066656 (Super. Ct. No. DF008873) |

APPEAL from an order of the Superior Court of San Diego County, Maureen F. Hallahan, Judge.  Affirmed.


Ernest Jay Irby, in pro. per., for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Linda M. Gonzalez and Ricardo Enriquez, Deputy Attorneys General, for Plaintiff and Respondent.

There is no dispute in the record that a complaint filed by plaintiff and respondent County of San Diego Department of Child Support Services (the county), alleging

defendant and appellant Ernest Jay Irby (Ernest) owed the county child support, was not properly served by publication and that the default judgment which was thereafter entered against him was defective. Moreover, there is no dispute the complaint was not properly served within three years of filing, as required by Code of Civil Procedure section 583.210, subdivision (a).

However, notwithstanding these procedural defects, Ernest appeared in the trial court some years later, after having made regular payments on the judgment. In the trial court, he first challenged the propriety of an earnings assignment order the county had obtained, which permitted it to garnish his wages. Ernest then challenged the validity of the county's judgment; he argued that service of the complaint by publication was improper. In response to his challenge to the service of process, the county agreed that it would cease any further collection efforts on its judgment and accept as payment in full on the judgment, previous payments it had collected from Ernest. The agreement between Ernest and the county was set forth in a stipulation entered into by the parties in open court.

More than a year after entering into the agreement with the county, Ernest made a motion to set aside the default judgment and recover from the county the payments it had collected from him. He argued that the default judgment was void, that his later agreement with the county was the product of coercion, and that he was entitled to reimbursement from the county of the money it had previously collected from him. The trial court denied his motion to set aside the default. It found that, although service of the

complaint by way of publication was improper, Ernest had generally appeared in the action and waived any defects in prior service of the complaint.

We affirm, but not on the theory adopted by the trial court.  A general appearance is only prospective in that it only gives the trial court power over a litigant with respect to future orders and processes.  Thus, Ernest's general appearance did not prevent him from challenging the validity of the county's judgment.  However, the court did have power to thereafter enter the parties' stipulated agreement.  That agreement, which provided Ernest with relief from enforcement of the judgement, appears valid on its face and we are required to presume that the trial court rejected his contention that it was coerced.  Under the terms of the stipulation, Ernest waived his challenge to the validity of the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Paternity and Initial Care/1993-1996

Ernest fathered a daughter who was born in July 1991.  Between 1993 and 1996, the child was in the custody of her mother, who received child support assistance from the county.  In 1996, the county initiated a petition with respect to the child and Ernest was given custody of her.  Ernest thereafter maintained custody of the child and provided her support throughout the remainder of her childhood.

### B.  Complaint and Service by Publication

In 1996, the county filed a complaint against Ernest in which it sought to recover from him the assistance it had provided to his daughter between 1993 and 1996.  Although, by way of the dependency placement it had made, the county was aware of

Ernest's address, in 1997 the county sought and received an order permitting it to serve him by way of publication. Ernest did not respond to that service, and the county took his default and judgment against him was entered. Shortly thereafter, the county obtained an earnings assignment order (EAO) in the amount of $441 a month.

C. Collection Efforts and Payments

1. *2000-2001*

In 2000, in an effort to enforce the judgment, the county garnished Ernest's wages in the amount of $441 a month, as well as tax refunds he was due. According to Ernest, in 2001 the county agreed to reduce its garnishment to $100 a month and to cease charging him interest on the principal amount he owed.

2. *2012*

Ernest made payments to the county through 2011. On February 9, 2012, Ernest appeared in the county's support action and made a written request that the trial court quash the underlying EAO or modify it. Ernest argued he had provided his daughter support at all times, including the period during that her mother had custody of her.

The county responded to Ernest's request and argued that he did not qualify for an order quashing or modifying the EAO.

On March 20, 2012, the trial court stayed enforcement of EAO and continued the hearing on Ernest's request until June 26, 2012.

On March 21, 2012, Ernest prepared and served a request that the default judgment be set aside. The request challenged the propriety of service of the complaint

by publication and argued the default judgment should be set aside. Although the clerk of the court refused to file the request, the county responded to it and opposed it. Ernest renewed the motion on June 21, 2012.

On July 31, 2012, Ernest and the county appeared in the trial court and entered into a stipulated agreement which provided as follows: "Parties agree that there is a bona fide dispute as to service of summons and complaint and as to arrears. The County and Respondent agree to accept payments already made by Respondent as consideration for settling County arrears (principal and interest) at zero as of 7/31/12. All enforcement is suspended. DCSS shall close its case." The parties' stipulation did not purport to determine whether service of the county's complaint was valid.

D. Motion for Relief from Default

On November 19, 2013, Ernest moved again for relief from the default judgment. He argued that, in light of the fact that at the time the complaint was served by publication the county department of social services had recently placed his daughter in his custody, it either knew or could have easily determined his actual address and personally served him. Thus, he argued that service of the complaint by publication was improper, that the default judgment should be set aside, and that the money he paid on the judgment should be returned to him.

As we indicated at the outset, the trial court agreed with Ernest that service on him was defective; in particular, the trial court found the affidavit submitted in support of the application for an order permitting service by publication was erroneous in stating that

the county had made multiple inquiries in an effort to locate Ernest. In light of the fact the county's department of social services was aware of Ernest's address and that his address appeared in the court's juvenile dependency file, the trial court found the county's failure to locate him was "egregious." Because the county did not conduct the diligent search required by Code of Civil Procedure section 415.50, the trial court agreed service of the summons by publication was improper and that the default judgment was invalid.

However, the court further found that in requesting the EAO be quashed or modified on the grounds, Ernest made a general appearance in the county's action against him and waived any defects in service of process on him.

Accordingly, the trial court denied Ernest's motion. Ernest filed a timely notice of appeal.

I

The county does not dispute the trial court's finding that it failed to exercise due diligence in attempting to personally serve the complaint before applying for an order permitting service by publication. Thus, the county concedes that service of the complaint was defective.

The county also concedes that under *In re Marriage of Smith* (1982) 135 Cal.App.3d 543, 545 (*Smith*), Ernest's initial appearance seeking relief from the EAO, although a general appearance, did not retroactively validate service of the complaint. (See *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 11-13.) Although the court in *Smith* recognized the common law rule that a general appearance waives any defect in the

service of process, the court found that in adopting Code of Civil Procedure section 410.50, the Legislature abandoned the common law rule and that, under the statute, a general appearance does not retroactively cure defects in service but instead only provides the court with prospective power over a litigant. "[Code of Civil Procedure] [s]ection 410.50 provides: '(a) Except as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party from the time summons is served on him as provided by Chapter 4 (commencing with Section 413.10). A general appearance by a party is equivalent to personal service of summons on such party. [¶] (b) Jurisdiction of the court over the parties and the subject matter of an action continues throughout subsequent proceedings in the action.' [¶] . . . [¶] . . . Code of Civil Procedure section 410.50 is inconsistent with the [common law waiver rule] because subdivision (b) specifically states that jurisdiction obtained pursuant to subdivision (a) 'continues throughout *subsequent* proceedings in the action.' "[1] (*Smith*, at pp. 550-551, fns. omitted.)

In sum then, there is no real dispute between the parties that the trial court erred in finding that Ernest waived his right to challenge service of the complaint when he appeared and challenged the continued propriety of EAO. Under *Smith*, his request for relief from the EAO, although a general appearance, did not prevent him from challenging the earlier service of process.

---

[1] While a general appearance does not retroactively validate improper service of a complaint, it does waive any claim a litigant may have with respect to the court's substantive personal jurisdiction over the litigant under our state's long-arm statute. (*In re Marriage of Obrecht*, *supra*, 245 Cal.App.4th at pp. 11-12.)

II

The trial court's erroneous analysis does not end *our* analysis. It is axiomatic that " ' " '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " ' " (*People v. Smithey* (1999) 20 Cal.4th 936, 972.) A closely related principle requires that "[a] judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*).)

Consistent with these principles, where, as here, the record does not show the appellant challenged the trial court's findings as inadequate in the trial court, we are required to imply any reasonable finding that supports the judgment. (*Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134.)

In addition, we note that Ernest elected to proceed on appeal without a reporter's transcript. On such appeals, we " 'must conclusively presume that the evidence is ample to sustain the [trial court's] findings.' " (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) "Where no reporter's transcript has been provided . . . the judgment must be conclusively presumed correct as to all evidentiary matters. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule is that an appellant who attacks a judgment but supplies

no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

These procedural rules in turn bring us to the parties' stipulation. It was only entered *after* Ernest's appearance in the action and, even under *Smith*, clearly the trial court had the power to enter it. As the county asserts, and Ernest does not dispute, the stipulation plainly represents an agreement the county would cease enforcing its judgment and, in exchange, Ernest would forego his contention that service on him by way of publication was defective. In the trial court and again on appeal, Ernest has suggested that the stipulation was not enforceable because it was coerced by statements the county's attorney made to him at the time the stipulation was entered. According to Ernest, in discussing the stipulation with him, the county's attorney told him that in the absence of the stipulation he could be arrested for contempt. The record on appeal, however, contains no admissible evidence of that threat; rather, all that appears is a statement by Ernest in reply papers he filed in support of his motion for relief from the county's judgment. Moreover, because a reporter's transcript is not part of the record on appeal, we have no record of what the county presented on the coercion issue and what, if any, objections it made to any evidence offered by Ernest. Thus, in the absence of express findings by the trial court and an adequate record on the issue, not only does *Arceneaux* require that we imply that the trial court rejected Ernest's coercion contentions, we must also conclude that our implied finding is supported by the record. (See *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.)

In reaching these conclusions with respect to the coercion issue, we note that the circumstances that are disclosed on the record undermine Ernest's contentions. The stipulation provided Ernest with the principal relief he was seeking: termination of his obligation to continue paying on the judgment; at the time of the stipulation, the trial court had stayed enforcement of the judgment and he was under no immediate threat of an enforcement action. Finally, Ernest did not bring the motion to dismiss until more than 17 months after he entered the stipulation. That delay is more consistent with Ernest's late discovery of the strength of his service of process contentions than with his role as the victim of any coercion.

Because on this record the stipulation was valid, and because under it Ernest gave up his right to challenge service of process, we must affirm the trial court's order denying his motion for relief from the default judgment.

### III

We do not reach Ernest's contention the trial court was required to dismiss the county's complaint because the complaint was not served on him within three years after filing. (See Code Civ. Proc., § 583.210, subd. (a); see also *Watson v. Superior Court* (1972) 24 Cal.App.3d 53, 57.) Ernest did not raise this issue in the trial court. His argument is of course dependent on the success of his contention that the county's service of process by publication was defective; if service by publication was effective, no violation of the three-year requirement occurred. However, as we have discussed, as a factual matter, Ernest waived his service of process contentions when he entered the

stipulation. Thus, arguably in waiving his contentions with respect to service of process by publication, Ernest also waived his new derivative and closely-related argument the complaint was not served within three years. When, as here, an issue is dependent on a factual determination, an appellant may not raise it for the first time on appeal. (See *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1; but see *Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73.)

DISPOSITION

We accept, and trust that the county accepts, the trial court's appraisal of its conduct in serving Ernest by way of publication. Nonetheless, like the trial court, we conclude that the record before us does not permit relief from the default judgment. Accordingly, we affirm the trial court's order. Each party to bear its own costs.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

PRAGER, J.[*]

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.