Filed 12/3/21  Sanders v. Sanders CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LEONARD SANDERS,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>PHILLIP SANDERS,<br><br>  Defendant and Appellant. | F080985<br><br>(Super. Ct. No. 20CEFL00357)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Lisa M. Gamoian, Judge.

Phillip Sanders, in pro. per., for Defendant and Appellant.

Kahn, Soares & Conway, Michael J. Noland, Jennifer E. Dunne, and Ian Brady for Plaintiff and Respondent.

-ooOoo-

Phillip Sanders appeals from the trial court's February 13, 2020, order granting his brother, Leonard Sanders, a Domestic Violence Restraining Order against him.  On appeal, Phillip contends that he was not adequately served with either the temporary

---

[*] Before Poochigian, Acting P. J., Meehan, J. and Snauffer, J.

restraining order or the notice of hearing, and that the trial court abused its discretion by not reviewing Phillip's video evidence, refusing to admit Phillip's hearsay testimony, and admitting Leonard's hearsay testimony. Because Phillip's appeal improperly raises objections not raised in the trial court and is unsupported by legal citations and cogent legal arguments, we may reject it on that basis alone. However, even considering the merits, we find that no argument he raises warrants overturning the trial court's order. We affirm.

## FACTS

Leonard filed a Request for Domestic Violence Restraining Order against Phillip on January 21, 2020.[1] The court issued a Temporary Restraining Order ("TRO") that same day protecting Leonard until the hearing scheduled for February 13. At the February 13 hearing, both Leonard and Phillip appeared without witnesses, and the court heard both sides of the story.

### *Leonard's Testimony*

Leonard claimed he was the primary caretaker for his mother who suffered a stroke on December 24, 2019. Both he and his brother, Phillip, resided at their mother's house.

On January 18, their mother was going to amend her trust to exclude Phillip, which Leonard explained to Phillip that day. After a notary arrived at the house, Leonard and the notary entered his mother's room so she could execute the documents. Leonard closed the door. According to Leonard, Phillip "barged" through the door. Leonard attempted to prevent Phillip from entering the room, and Phillip struck Leonard in the eye with a closed fist. Leonard received a cut on his eye.

Leonard called the sheriff. Once the sheriff arrived, Phillip agreed to leave so that Leonard could take care of their mother. Leonard proceeded to obtain the January 21

---

[1] All references to dates refer to dates in 2020 unless otherwise stated.

TRO against Phillip. On January 25, Phillip returned to their mother's house, where he was served with the TRO. Leonard, Phillip, and their two sisters then entered their mother's room, and, according to Leonard, their mother "told [Phillip], you know, pointblank with my sisters there she didn't want him there."

### *Phillip's Testimony*

Phillip claimed that he and his brother both served as their mother's caretakers. Phillip testified that, on January 18, he entered his mother's room when Leonard and the notary were present to record the transaction on his phone. At the hearing, Phillip attempted to introduce pictures from the video but, due to poor quality, the trial judge was unable to determine the contents of the photos, save for one photo of Phillip's scar, which he claimed he received from Leonard on that day. Phillip then testified that Leonard attacked him, so he went to the living room to call the police. But before he could do so, he claimed, Leonard attacked him again, knocking the phone from his hand. Phillip then fought back, striking Leonard in the eye, but Leonard ran to grab a knife. Phillip ran away and called 9-1-1. Phillip claimed that he videotaped these events, and that this video evidence corroborated his testimony.

According to Phillip, officers arrived on scene. Both brothers desired to press charges against the other, but, according to Phillip, police told the brothers that, because both had injuries, if one of them pressed charges, both would go to jail. So, the brothers agreed to drop their charges against each other. Leonard also agreed to leave the area. Phillip testified that a "female officer told me [Leonard] was going to leave," but the trial court found this was inadmissible hearsay. Later, Phillip's brother, Melvin, and sister arrived, and Phillip agreed to take his things and stay away from the house until things calmed down.

When Phillip and his sister returned on January 25 and entered their mother's room, Leonard was there and picked up a bat. Melvin, their brother, picked up a crutch. Their sister intervened, and Phillip called the police. When the police arrived, they

3.

served the restraining order on Philip. Phillip told the officers that he wanted to press assault charges. However, Phillip testified that the officers "basically told me because of the fact that [Leonard] didn't swing the bat at you or [Melvin] didn't swing the crutch at you guys, we cannot press assault charges." The court ruled this was inadmissible hearsay.

### The Court's Ruling

After hearing testimony from both brothers, the trial court found Leonard had met his burden of proof by preponderance of the evidence. The court determined Leonard was the more credible of the brothers, and that on January 18, Phillip was the aggressor, attempted to barge into their mother's room, and struck Leonard in the eye with his fist. The court issued a permanent restraining order against Phillip, protecting Leonard for three years. The court issued an Order of Protection on February 13, and Phillip timely appealed on March 16.

## DISCUSSION

### I. Improper Service

Phillip first argues that he was improperly served with the TRO and the notice of hearing. We find that whether he was properly served or not is irrelevant because Phillip made a general appearance at the hearing. "A general appearance by an unserved or improperly served defendant is *equivalent to personal service* so that the court has personal jurisdiction throughout *subsequent* proceedings in the action." (*In re Marriage of Smith* (1982) 135 Cal.App.3d 543, 548 (*Smith*), first italics added, cited by *In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 12.) This rule exists "to preclude a defendant from litigating an action to a conclusion and later, if dissatisfied, urging lack of personal jurisdiction over him." (*Smith*, *supra*, 135 Cal.App.3d at p. 548.) Phillip attempts to do just this on appeal. After litigating the restraining order to conclusion, he now attempts to assert a lack of jurisdiction by improper service after obtaining an unsatisfactory result. Phillip cannot now complain of improper service of the notice of

4.

hearing because he appeared at the hearing and did not object to the alleged improper service to the trial court. Instead, he proceeded to a full evidentiary hearing at which, after considering the merits, the court issued a permanent restraining order rendering the TRO irrelevant.

Furthermore, a Domestic Violence Restraining Order ("DVRO") "shall not be denied solely because the other party was not provided with notice." (Fam. Code, § 6300, subd. (b).) Therefore, even if Phillip had no notice of the TRO or the hearing, that would not by itself invalidate the trial court's order.

## II. Other Objections

Phillip contends the trial court abused its discretion by refusing to consider both his video evidence and hearsay evidence and by admitting Leonard's hearsay evidence and testimony about witnesses. We disagree.

"The court's issuance of a protective order under the [Domestic Violence Prevention Act] is a discretionary matter." (*Herriott v. Herriott* (2019) 33 Cal.App.5th 212, 223 (*Herriott*).) We will not overturn the trial court's exercise of discretion unless, as a matter of law, the trial court abused its discretion by exceeding the bounds of reason such that no judge would reasonably issue the same order given the relevant circumstances. (*Id.* at p. 223.) On appeal, we presume the trial court's order is correct, and the burden is on the appellant to demonstrate both that the trial court erred and that the error was prejudicial. (*Ibid.*; *In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31 (*Bonds*); *Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006 (*Grappo*).) Prejudicial error occurs where the reviewing court determines that, absent the error, it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

To satisfy this burden, the appellant must " 'supply the reviewing court with some cogent argument supported by legal analysis and citation to record,' " and " 'explain how [the law] applies in his case.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019)

36 Cal.App.5th 142, 162.) " '[O]ne cannot simply say the court erred, and leave it up to the appellate court to figure out why.' " (*People v. JTH Tax, Inc*. (2013) 212 Cal.App.4th 1219, 1237.) These standards apply to attorneys and to self-represented parties, like Phillip, equally. (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.) We now turn to Phillip's objections.

## A.    Procedural Deficiencies

We first note that, as a general matter, Phillip failed to object, while in the trial court, to the trial court's alleged refusal to review his video evidence and to admit his hearsay evidence, as well as the court's decision to allow Leonard's alleged hearsay evidence. Consequently, Phillip forfeits these objections on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"]; *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 785 (*Nevarez*) [appellant forfeited challenge to trial court's refusal to consider text messages before issuing a domestic violence restraining order because he did not object in trial court]; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725 [appellant forfeited objection to issuance of injunction based on hearsay statements because appellant did not object to hearsay in trial court].) Furthermore, Phillip does not support any of these objections with citations to authority or any legal argument. Consequently, Phillip waives these objections on appeal. (*Nein v. HostPro, Inc*. (2009) 174 Cal.App.4th 833, 855 [where a party " 'fails to make a legal argument or to cite any legal authority' " in support of a contention, the claim is forfeited on appeal].)

## B.    Merits

Even were we to consider this appeal on the merits, appellant has not identified any error constituting an abuse of the trial court's discretion.

First, the trial court did not abuse its discretion by allegedly refusing to consider the video evidence. In reviewing the record, it appears that at no point did Phillip clearly

6.

request the court watch the cellphone video, present the cellphone to the court for review, or request the video be admitted into evidence. Moreover, Phillip's testimony explained the video evidence's contents, and therefore exclusion of the video evidence was harmless because Phillip testified to its contents. (*In re Marshall K*. (1970) 14 Cal.App.3d 94, 100—101 [error in excluding demonstrative evidence was harmless where the evidence "was substantially before the court by oral testimony"].)

Second, the trial court did not abuse its discretion by refusing to admit Phillip's hearsay testimony about what certain police officers said to him. On appeal, Phillip must show that the trial court's alleged error was prejudicial. (*Herriott*, *supra*, 33 Cal.App.5th at p. 223; *Bonds*, *supra*, 24 Cal.4th at p. 31; *Grappo*, *supra*, 11 Cal.App.5th at p. 1006.) But Phillip did not argue in the trial court and does not argue on appeal that the trial court would have decided the outcome of this case differently had it admitted his hearsay testimony.

Even if he had made such an argument, we fail to see how the two statements by Phillip that the court ruled hearsay would have changed the outcome in this case: "the female officer told me [Leonard] was going to leave," and "[the police] basically told me because of the fact that [Leonard] didn't swing the bat at you or [Melvin] didn't swing the crutch at you guys, we cannot press assault charges." Neither statement has anything to do with the trial court's factual findings. The trial court found that, on January 18, Phillip Sanders was the aggressor, barged into his mother's room through a closed door, and, when prevented, struck Leonard in the eye with a closed fist. We fail to see how the officers' statements would in any way change the trial court's factual findings and subsequent DVRO.

Third, the trial court did not abuse its discretion by admitting Leonard's hearsay testimony. Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is *offered to prove the truth of the matter stated*." (Evid. Code, § 1200, subd. (a), italics added.) Leonard made only one statement that

7.

could be construed as hearsay.[2]  He testified that his mother "told [Phillip], you know, pointblank with my sisters there she didn't want him there."  However, even if we assume the trial court erred, we cannot see how the error was prejudicial.  We noted above that the trial court based its order on factual findings regarding the January 18 incident.  We fail to see how exclusion of Leonard's hearsay testimony could have altered the trial court's findings as to that incident.

Finally, we address the trial court's credibility determination.  Though Phillip does not expressly raise the issue of credibility in his brief, he often expresses dissatisfaction with the trial court's determination that Leonard, not Phillip, was more credible.  However, it is the trial court's job to make credibility determinations, not ours.  (*McCord v. Smith* (2020) 51 Cal.App.5th 358, 364; *Small v. Fritz Companies, Inc*. (2003) 30 Cal.4th 167, 182.)  We will only overturn credibility determinations where testimony is so incredulous, improbable, or unbelievable that reasonable minds would find it unacceptable.  (*Nevarez, supra,* 227 Cal.App.4th at p. 786.)  We find nothing in Leonard's testimony meets this standard.  Consequently, we must affirm the trial court's credibility determination.  Because Phillip's appeal fails both procedurally and on the merits, we affirm the trial court's order.[3]

## DISPOSITION

The trial court's February 13, 2020 Domestic Violence Restraining Order is affirmed.  Costs on appeal are awarded to respondent.

---

[2] We note that Phillip seemed to object to Leonard's testifying that other witnesses were in the room.  This is not hearsay because it is not evidence of a witness's statement but evidence of a witness's mere presence, which is not barred by the hearsay rule.  (See Evid. Code, § 1200, subd. (a).)

[3] Phillip confusedly alleges in his appellate brief that Leonard committed perjury.  That issue was not raised in the trial court.  We decline to decide issues not raised below.  (*Decea v. County of Ventura* (2021) 59 Cal.App.5th 1097, 1103.)  Insofar as Phillip believes the restraining order contained an inaccurate address, Phillip had the opportunity to raise that issue at the hearing and petition the trial court to amend the order.