Filed 5/5/15  Riverside County Dept. of Child Support Services v. Briscoe CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| RIVERSIDE COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,    Plaintiff and Respondent,    v.  TIM K. BRISCOE,    Defendant and Appellant. | G050115  (Super. Ct. No. RID398184DA)  O P I N I O N |

Appeal from an order of the Superior Court of Riverside County, Kenneth J. Fernandez, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Reversed with directions in part and reversed and remanded in part.

Warren Law Group and Randy Warren for Defendant and Appellant.

John Replogle, Edward McCue and Hirbod Rashidi for Plaintiff and Respondent.

\*          \*          \*

## I.  INTRODUCTION

Appellant Tim Briscoe challenges the denial of his request to set aside all California child support orders made up to the time Michigan formally relinquished jurisdiction over child support to California in January 2011.  This appeal presents a series of complex issues involving the interaction of the exclusive jurisdiction provisions of both UIFSA (the Uniform Interstate Family Support Act) and the federal FFCCSOA (Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B), provisions of the California Family Code that authorize and govern county welfare reimbursement actions (including §§ 4002, 4909, 17000, 17402 and 17404[1]), a July 1999 Michigan child support judgment, and on top of all that, a problem of minimum contacts and personal jurisdiction that takes us back to our law school days.  To summarize:

(1)  For the period 1998 to September 2008, when appellant Tim Briscoe's then-attorney, possibly inadvertently, made a general appearance on his behalf, California had no personal jurisdiction over Briscoe.  Briscoe was not properly served under California law in 1998 when he was living in Michigan as a citizen of Michigan.  Furthermore the record reveals insufficient minimum contacts with California to accord with elementary due process until 2008.  *Kulko v. Superior Court* (1978) 436 U.S. 84 (*Kulko*) is directly on point and cannot be distinguished.  In fact, there were more contacts in *Kulko* between the out-of-state father and California than there are here, and the contacts in *Kulko* were still insufficient.  Because California had no personal jurisdiction over Briscoe in 1998, the child support order obtained that year by Riverside County was void.

(2)  The effect of Briscoe's attorney's general appearance in September 2008 was prospective only.  It did not retroactively confer jurisdiction over him for purposes of any California orders in place from 1998 to 2008.  (*In re Marriage of Smith*

---

[1]      All undesignated statutory references are to the Family Code, except those to 1738B, which is to Title 28 of the United States Code.

(1982) 135 Cal.App.3d 543 (*Smith*) [holding that the Jurisdiction and Service of Process Act of 1969 changed the former common law rule to make general appearances after faulty service of process to operate prospectively only].)  The trial court should have granted the set aside motion as to all orders effective until Briscoe's attorney's general appearance on September 11, 2008.

(3)  With regard to the 1999 Michigan child support judgment, as long as Briscoe was a resident of Michigan, the Michigan order and judgment occupied the child support field exclusively.  (§ 4909, subd. (d).)  This is a matter of subject matter jurisdiction, and Briscoe's attorney's general appearance did not (and could not) have waived it.  On the other hand, Riverside County's ability to prosecute a case for welfare reimbursement is (and was) by no means limited by the behavior of the mother of the child in this case, who may have committed welfare fraud or concealed the child.  (*In re Marriage of Comer* (1996) 14 Cal.4th 504 (*Comer*) [concealment by custodial parent did not estop county from asserting its right to welfare reimbursement]; *County of El Dorado v. Spence* (1986) 182 Cal.App.3d 698 (*El Dorado*) [ongoing family law case could not prejudice county's right to reimbursement].)  But then again Riverside County's ability to prosecute *is* subject to "limitations otherwise imposed by law."  (*County of Yolo v. Francis* (1986) 179 Cal.App.3d 647, 652.)  And one of those limitations is found in section 4909, which specifies there can be only one state with jurisdiction over child support.  (Accord, § 1738B [providing that only one state shall have exclusive concurrent jurisdiction over child support].)

(4)  It appears that sometime between July 2010 and January 2011, Briscoe moved to Texas from Michigan.  As a matter of law, Michigan lost its exclusive jurisdiction at that point.  But we don't know precisely when that was.  Therefore, we remand the matter back to the trial court to ascertain precisely when Briscoe moved to Texas.  At that point the California support orders were valid and became the exclusive child support orders for the case.  (See *In re Marriage of Crosby & Grooms* (2004) 116

3

Cal.App.4th 201 (*Crosby & Grooms*).)  On remand the trial court should not set aside any orders after Briscoe left Michigan for Texas.

## II.  FACTS

Tim Briscoe and Lena Rascon had a son, Marion, born in Pontiac, Michigan in May, 1997.  Rascon filed a paternity complaint in an Oakland County, Michigan court for child support from Briscoe.  In January 1999 she obtained an ex parte order from that court which required Briscoe to pay her about $490 a month.  (The order specifies exactly $113 a week, which works out to about $490 a month on a yearly basis.)  The order also forbade the removal of Marion from the state of Michigan without permission of the Oakland County, Michigan Circuit Court, *or* permission from Rascon herself.  The reasonable inference of the removal clause is that Rascon, Briscoe and Marion were all living in Michigan at the start of 1999, and *Rascon* intended to stay in Michigan.  *She* was afraid of Briscoe taking their child out of state.

However, Rascon had already filed for public assistance from Riverside County in March 1998.  The filing for welfare prompted the Riverside County family support office to file, in June 1998, an application for a proposed "expedited child support order," case number 398184DA (the "8184DA Riverside action"), naming Briscoe as defendant, and seeking $459 a month from him.  According to the proposed order, the $459 figure was "guideline support based on upon known income, or support based on obligor's presumed income as provided by law."  The proposed order was supported by a form declaration which contained a number of pre-printed statements, two of which were checked:  (1) that "custodial parent had named the Defendant" in a confidential paternity questionnaire which the parent completed as part of the district attorney's office's "investigation," and (2) "Defendant is/was an employee and/or self employed and/or received funds from – and at this point blanks were filled in – "9/23/96 to PRESENT."  That is, there was no specific allegation as to Briscoe's income.  There

4

was no reference to any proceeding in Michigan.  The proposed order also misspelled the child's name as "Marian."[2]

There is no indication in this record that Briscoe had ever set foot in California, much less had sexual intercourse in this state, at any time prior to 2008.  Both the ex parte child support order obtained by Rascon in Michigan in January 1999 and a later Michigan judgment entered in July 1999 specified his address as a place in Southfield, Michigan.

Neither is there any indication in the record of any personal service on Briscoe of the 8184DA Riverside action.  The proof of service in that action showed the process server had stopped by a Michigan address – an address not given on the proof of service form[3] – on three occasions:  On October 26, 1998, the server came by the address at about 7 p.m. in the evening, and Briscoe was "not home."  On October 31, 1998, the process server knocked at 2:15 p.m.  There was "no answer."  And on November 1, 1998, the process server again came around, this time at 11:30 a.m., and again there was no answer.  So, on November 2, 1998, the process server presented the complaint and accompanying papers to a "sister," who would not state her name, described as a "5' 9" 155 Blk/female short hair md complexion."  *How* the process server knew the woman

---

[2]     Marion was John Wayne's real first name.

[3]     Section 17000 et seq. sets up the law governing the collection of child support by counties.  Section 17212, subdivision (b)(3) provides for sealing of records of defendant's addresses – after all, paternity has not yet been proved by the time of service.  But it also allows for court orders unsealing the information.  The statute reads:  "Notwithstanding any other provision of law, a proof of service filed by the local child support agency shall not disclose the address where service of process was accomplished.  Instead, the local child support agency shall keep the address in its own records.  The proof of service shall specify that the address is on record at the local child support agency and that the address may be released only upon an order from the court pursuant to paragraph (6) of subdivision (c).  The local child support agency shall, upon request by a party served, release to that person the address where service was effected."

Subdivision (c)(6) of section 17212, however, allows for unsealing for due process reasons.  Its first sentence provides:  "After a noticed motion and a finding by the court, in a case in which establishment or enforcement actions are being taken, *that release or disclosure to the obligor or obligee is required by due process of law*, the court may order a public entity that possesses an application, paper, document, or record as described in subdivision (b) to make that item available to the obligor or obligee for examination or copying, or to disclose to the obligor or obligee the contents of that item."  (Italics added.)

If Riverside County has ever attempted to obtain an order opening up its file to demonstrate that there were attempts to serve Briscoe at his Southfield, Michigan address, this record does not show it.

was Briscoe's sister if she didn't give her name was not explained on the proof of service form and does not otherwise appear in the record. Fifteen days later, on November 17, 1998, the process server also mailed a copy of the summons and complaint to Briscoe at an address in *Oak Park,* Michigan. Oak Park is not Southfield.[4]

Sometime in or before January 1999 – before any judgment or support order would be entered in the 8184DA Riverside action – Rascon herself initiated the action in Michigan to obtain child support to which we have already alluded, case number 99-616245-DC in Oakland County, Michigan (the "245DC Michigan action"). Rascon obtained an ex parte child support order that very month. That order required Briscoe to pay $113 a week for Marion's support, with Rascon listing her address as a place in Berkley, Michigan, and Briscoe's address at a place in Southfield Michigan.[5] In contrast with the 8184DA Riverside action, Briscoe *was* personally served with the 245DC Michigan action.

Two months later, in late March 1999, in the 8184DA Riverside action, the Riverside County family support office obtained a default judgment against Briscoe, titled "expedited child support order." The document again referenced sections 3620 through 3634, and provided for a support payment at the initially-asked for level of $459 a month, payable to the Riverside County District Attorney's office. Since Briscoe had not appeared in the proceeding, the $459 figure was based on statutory welfare minimums.[6] Again there was no reference to any proceeding in Michigan, and there is no language in the order purporting to modify any Michigan order.

---

[4]     They are both northern suburbs of the city of Detroit.

[5]     We grant Briscoe's request, filed January 22, 2015, to take judicial notice of the ex parte order obtained by Rascon, Oakland County Michigan case number 99-616245-DC.

[6]     Section 3630 provides (and provided in 1999) that the amount in an expedited child support order shall be "the minimum amount the obligated parent is required to pay as set forth in the application." Section 3622 in turn states (and stated in 1999) that the application must set forth minimum amounts provided under *either* section 4055 or sections 11452 and 11452.018 of the Welfare and Institutions Code. Section 4055 sets out a complex formula based on factors including parental incomes and time shares, thus envisioning an evidentiary hearing. By contrast, Welfare and Institutions Code sections 11452 and 11452.018 set out schedules for welfare payment, and so are amenable to default proceedings.

The next event occurred in the 245DC Michigan action, four months later: In July 1999, the court entered a "consent judgment of custody." There are a number of provisions of the Michigan judgment bearing on child support, which we recount now:

(1) It provided that both Rascon and Briscoe would have *joint physical* as well as joint legal custody until Marion turned 18.

(2) It provided that "the domicile or residence" of Marion "shall be the state of Michigan."

(3) It specified two current addresses for Marion: One in Corona, California with Rascon and one in Southfield, Michigan with Briscoe.

(4) It provided that Briscoe did not object to Rascon "moving to the state of California and having possession of the minor child," but that acquiescence was "subject to" a "parenting time schedule" set out in the judgment.

(5) The parenting time schedule stated that until Marion began attending school and Rascon lived in Michigan, each parent would alternate custody of Marion in four-week intervals. If, however, Rascon moved to California, the alternate custody periods would be every 16 weeks. When Marion did begin to attend school, it would be Briscoe's residence that would "be used to determine the district" where Marion would go to school, and Briscoe would "be the primary custodian during the school year." If Rascon were to move to California, she would only have custody of Marion during the summer, Easter break, and one-half of the Christmas break. Though it doesn't say so expressly, the implication of the parenting time provision is that if Rascon were to move to California, Briscoe would be the custodial parent, since the majority of the physical custody time would be with him as Marion would be going to Michigan schools.

(6) On the other hand, the judgment also provided: "Upon [Rascon's] decision to move to the state of California, [Briscoe] shall enter into a stipulated order with [Rascon] permitting the same to occur and to have possession of the minor child in

7

the state of California.  However, Michigan shall retain jurisdiction."  No such stipulated order appears in the record.

(7)  Under the heading "Child Support," the Michigan judgment provided: "Child support is reserved until further order of the Court.  Each party shall be solely responsible for the support of the minor child while he is in their respective possession. This provision shall continue in effect until said child attains the age of eighteen (18) years or graduates from high school, but not beyond age nineteen [y]ears, six months, as provided by PA 237-245, 1990, or until further order of this Court."[7]

(8)  The judgment also had a separate provision for Marion's health insurance.  Briscoe was to maintain or obtain health insurance for the child, plus pay half of any uninsured health care expenses:  "Defendant [Briscoe] shall maintain or obtain health care coverage available at reasonable cost as a benefit of employment [until] said child attains the age of eighteen (18) years, or graduates from high school but not beyond nineteen years, six months, as provided by PA 237-245, 1990, or until the further order of this court.  Plaintiff shall pay 50% and Defendant shall pay 50% of any uninsured health care expenses."[8]

(9)  The parties were to give the Michigan Office of the Friend of the Court their social security and driver's license numbers, and were to notify that office within 21 days of any change in their mailing addresses "while any support shall be due and owing under the support provisions of this judgment or until further Order of this Court."  The Michigan Office of the Friend of the Court appears to function as a kind of referee in domestic cases.[9]  At the time of the 1999 Michigan judgment, the Office of the Friend of the Court had developed Michigan's own child support formula, and could make

---

[7]    This clause appears to be standard language in Michigan child support orders.  (See *Sheffer v. Sheffer* (Ind. Ct. App., Jan. 19, 2011, No. 45A05–1009–DR–543) 2011 WL 191493 at p. 1 [nonpub. opn.] [recounting language from an Oakland County, Michigan child support order requiring father to pay $154 a week].)

[8]    Again, the clause follows the pattern for Michigan child support orders, see *Sheffer v. Sheffer, supra*.

[9]    See Michigan Compiled Laws 552.505 [detailing duties of the office].

recommendations for child support orders.[10]  (Today it appears the office can also directly adjudicate child support orders.[11])

(10)  The parties were warned that their property was subject to liens and seizure for large arrearages "under the payor's support order."  They were also warned that except as provided in Michigan Compiled Laws section 552.603, which governs child support orders, each payment due is its own accrued judgment, and that, under the same statute, surcharges would be added to payments past due.

Meanwhile, back to California, in February 2000 – six months after the Michigan judgment was filed – Riverside County filed a supplemental complaint in the 8184DA Riverside action, seeking an extra $100 per month in child support.  (Once again the child's name was misspelled Marian.)  According to the subsequent proof of service, the supplemental complaint was served on June 27, 2000, at 8 p.m. on "Paula Briscoe – Mother."  Again, the actual address of the place of service was not given, but a subsequent declaration of mailing stated the complaint was mailed on August 29, 2000, to Briscoe, at an Oak Park, Michigan address.

A default was entered on the supplemental complaint in the 8184DA Riverside action about nine months later, in April 2001.  The proof of service of the default judgment was mailed to Briscoe at the address "on file with the Riverside County Department of Child Support Services."  However, there is no indication in the record – nor any assertion made by the County in its briefing – that the mailing address was anything other than the Oak Park address listed in the previous mailings.

---

[10]  See *Ghidotti v. Barber* (1998) 459 Mich. 189, 192-193 ["Pursuant to an order from the trial court, the friend of the court for Calhoun County conducted a child support review of defendant's obligation to her noncustodial son, James Jr. The friend of the court prepared two recommendations regarding defendant's child support obligations."].

[11]  See *Dedaj v. Dedaj* (Mich.App. July 23, 2013, 306981) [nonpub. opn.] [2013 WL 3814348].

9

Seven years later, in July 2008,[12] Riverside County made a motion for modification of the then-existing child support order. It is not clear how Briscoe found out about the hearing. A California attorney purported to represent him in the modification, and succeeded in obtaining a number of continuances until a hearing finally took place in January 2009. The first continuance obtained by Briscoe's attorney was dated September 11, 2008. At the eventual hearing, held April 29, 2009, Briscoe's attorney merely acquiesced to the proposed "modification" of support to $589 (California's guideline amount) without argument.[13] A little more than two years later, in June 2010, Briscoe filed in the Riverside Superior Court his own petition to establish paternity, case number RID237157 (the "Briscoe's 2010 Riverside action"). Marion was by now 13 years old. The complaint in Briscoe's 2010 Riverside action alleged that Marion was believed to reside in California. The petition alleged that Rascon was in violation of the Michigan judgment, and sought to have the California court enforce the Michigan judgment. The petition was clear that Briscoe was "specially appearing as a resident of the State of Michigan" and did not consent to jurisdiction by "C,"[14] which we surmise is the beginning of "California." However, the petition also sought a California order that would provide Briscoe with primary physical custody and Rascon with only reasonable visitation, which would not be exactly in accord with the Michigan judgment, which provided for alternating periods of physical custody.

[12]     As shown not only by the chronological order of the clerk's transcript, but by the docket entries of the case. There is a sudden leap from 2001 to 2008.

[13]     When Briscoe hired his present law firm to bring a motion to set aside the order, his lawyer described that particular attorney as a "fool." According to Briscoe's present attorneys, the 2008 attorney had been hired to make a special appearance to contest jurisdiction, and his general appearance as "in violation of what his client advised him."

Perhaps. Perhaps not. Riverside County is correct to note that Briscoe himself has not provided a declaration to the effect that his 2008 attorney made an unauthorized general appearance, so we will not go so far as to say on this record the appearance was inadvertent or, as later counsel contends, foolish. On the other hand, it is clear from both the reporter's transcript of the April 2009 hearing and the later order prepared by counsel for Riverside County that Briscoe was certainly not physically present at that hearing, despite a contrary notation in the minute order, which was probably just a clerical error. (See *People v. Smith* (1983) 33 Cal.3d 596, 599 ["that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence"].)

[14]     Literally, that's all our copy of the petition provided in a motion to augment the record says.

10

Briscoe's California efforts precipitated some kind of communication from a commissioner in the Riverside Superior Court to the Michigan Circuit Court concerning which of the two courts had jurisdiction. The result was an opinion and order from the Michigan Circuit Court formally relinquishing jurisdiction. The opinion said that under Michigan law the Michigan family court could determine "at any time" it "was no longer an appropriate forum and that another state is a more appropriate forum." The Michigan family judge noted that neither party nor the child now resided in Michigan: Briscoe had relocated to Texas and Rascon was in California. But the opinion did not mention *when* Briscoe had relocated to Texas. Accordingly, the Michigan family judge determined Michigan to be "an inconvenient forum" and "hereby" ordered "jurisdiction in this matter be relinquished to the Riverside Superior Court pursuant to" the Michigan statute that gives Michigan courts power to decline jurisdiction over child custody matters when Michigan is an inconvenient forum.[15] Under the "hereby" language of the Michigan opinion, jurisdiction was relinquished on February 8, 2011.[16]

On the heels of the Michigan court's relinquishment of jurisdiction, Briscoe brought, less than two weeks later, a motion to set aside and dismiss all child support judgments entered prior to the date of the turnover, February 8, 2011. That motion came to hearing September 19, 2011. The hearing was a combined one, partly dealing with Briscoe's 2010 Riverside action, and partly dealing with the set aside motion in the original 8184DA Riverside action. Both Rascon and Briscoe testified, though in Briscoe's case his testimony came in by telephone from Texas. The first part of the hearing showed the custody contest initiated by Briscoe was in full swing. (For example,

---

[15] The court cited Michigan Compiled Laws (MCL) section 722.1207. In pertinent part that statute reads: "Sec. 207. (1) A court of this state that has jurisdiction under this act to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon the motion of a party, the court's own motion, or the request of another court."

[16] That was the date the Michigan judge signed the order. It was filed in Riverside Superior Court in California on March 10, 2011, as part of Briscoe's 2010 Riverside action.

the commissioner expressed considerable irritation at Rascon for not having paid her half of a fee for a previously ordered custody investigator (see § 3111), necessitating a continuance.)

The second part consisted of oral argument on the motion on Briscoe's set aside motion. Briscoe's counsel opined that a better phrase than "set aside" would simply have been to have the previous support orders declared void. The trial court rejected that analysis and concluded that under section 3691, Briscoe had, at the most, only six months after his counsel's general appearance in the 2008-2009 modification matter to bring a set aside motion. A formal order denying the motion was filed October 21, 2011. Briscoe filed a timely appeal from it.

### III. DISCUSSION

A. *Orders Void 1998 to 2008*

1. *Service Deficient Under California Law*

The service of process of the 8184DA Riverside action was unquestionably deficient as a matter of California law. In both 1998 and 2000, there was substitute service on Briscoe via an unknown woman at a dubious address. California's substitute service statute is section 415.20 of the Code of Civil Procedure. The statute allows leaving a copy of the summons and complaint "during usual office hours in his or her office, or, if no physical address is known, at his or her usual mailing address [but not a post office box] with the person who is apparently in charge thereof."[17] While Code of Civil Procedure section 415.20 does not, in so many words, say that substitute service must be at a *correct* office or *correct* physical address, that is the implication of the statute. A person's "usual" physical address is that person's correct address. And there certainly is no authority that allows such service at an *incorrect*, i.e., not usual, address. Indeed, the lacuna in the statute *must* be construed to require the correct address, lest our

---

[17]    Section 415.40 of the Code of Civil Procedure allows this form of substitute service on a person outside the state.

12

state statute fail federal due process requirements. Said the United States Supreme Court in *Milliken v. Meyer* (1940) 311 U.S. 457, 463: "Its adequacy so far as due process is concerned is dependent on whether or not the form of substituted service provided for such cases and employed is *reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard*." (Italics added.) We think it self-evident that substitute service at an incorrect address cannot be said to be "reasonably calculated" to give a defendant actual notice.

In the present case, the record reveals no evidence that Briscoe lived or regularly resided at the Oak Park address at which women who were supposedly his sister and mother were served in 1998 and 2000. Nor is there any indication that these women were apparently in charge of that address. And there certainly is no evidence Briscoe – or any purported relative of his – was ever served at the Southfield Michigan address which the Michigan judgment declares to have been his address at the time. Under such circumstances, we must conclude that service on Briscoe at the Oak Park address in 1998 did not comply with California's substitute service statute. The 1999 judgment and 2000 modification order were not just voidable, but void. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1225-1226.)[18]

2. *Insufficient Minimum Contacts*

Even assuming Briscoe had been properly served, California still did not have a sufficient basis for jurisdiction over him. *Kulko v. Superior Court, supra,* 436 U.S. 84 is on point. In *Kulko*, the federal high court held that, as a matter of federal Fourteenth Amendment due process jurisprudence, California could not exercise

_____

[18] The proof of service in *Gorham* was simply fraudulent, with the process server falsely stating he had personally served a county's child support case on the defendant when he hadn't. That said, the facts here are not that much less outrageous than those in *Gorham*. Nothing in the record indicates Riverside County did anything other than get a possible address for Briscoe, and after its process server made three attempts to find Briscoe at that address, simply gave up and left the papers with an unnamed woman whom the process server inexplicably thought was Briscoe's sister in 1998 or mother in 2000. Nothing in this record indicates the County made any efforts to verify Briscoe's actual address, and we note once again that Riverside County has made no attempt to obtain an order that would allow it to argue that anyone ever attempted to serve Briscoe at his Southfield, Michigan residence.

13

jurisdiction over a New York father in a proceeding initiated by the mother to increase support from what had been in a New York separation agreement even where the father was properly served under California law.

The father in *Kulko* had more contacts with California than this record shows Briscoe ever had – at least until 2008. The father in *Kulko* had been in California for two military stopovers and had even gotten married in California on one of those stopovers. That wasn't enough. (*Kulko, supra*, 436 U.S. at pp. 92-93.)[19] He had also allowed his children to visit their mother in California three months of the year as provided by the separation agreement. That wasn't enough either. (*Ibid.*)[20] And even the strongest point in favor of jurisdiction – the purposeful act of sending one of the children to live in California and go to school here for a year – wasn't enough. (*Id.* at p. 94.)[21]

We note that the *purposeful decision* in *Kulko* to send a child to live in California is considerably more significant than Briscoe's mere acquiescence, under the Michigan judgment, to the *possibility* his son would spend time with his mother in California. (*In re Marriage of Nosbisch* (1992) 5 Cal.App.4th 629, 634 (*Nosbisch*) [court

---

[19]  "We agree that where two New York domiciliaries, for reasons of convenience, marry in the State of California and thereafter spend their entire married life in New York, the fact of their California marriage by itself cannot support a California court's exercise of jurisdiction over a spouse who remains a New York resident in an action relating to child support." (*Kulko, supra*, 436 U.S. at p. 93.)

[20]  "[T]o find personal jurisdiction in a State on this basis, merely because the mother was residing there, would discourage parents from entering into reasonable visitation agreements. Moreover, it could arbitrarily subject one parent to suit in any State of the Union where the other parent chose to spend time while having custody of their offspring pursuant to a separation agreement." (*Kulko, supra*, 436 U.S. at p. 93.)

[21]  Said *Kulko*: "We cannot accept the proposition that appellant's acquiescence in Ilsa's desire to live with her mother conferred jurisdiction over appellant in the California courts in this action. A father who agrees, in the interests of family harmony and his children's preferences, to allow them to spend more time in California than was required under a separation agreement can hardly be said to have 'purposefully availed himself' of the 'benefits and protections' of California's laws. [Citation.]" (*Kulko, supra*, 436 U.S. at p. 94.)

14

specifically rejected the theory that somehow jurisdiction was conferred by a parent merely agreeing the spouse could move the children to another state].[22])

In a request for supplemental briefing after oral argument, we asked the parties about the minimum contacts problem, and specifically cited *Kulko*. Riverside County made no attempt to factually distinguish *Kulko*.[23] It merely quoted a line in *Kulko* quoting from *International Shoe v. State of Washington* (1945) 326 U.S. 310, to the effect that due process is "not susceptible of mechanical application." (See *Kulko, supra*, 436 U.S. at p. 92.) Riverside County also stressed the obvious, which is that counties have a paramount interest in recovering child support payments from supporting parents. But none of that makes *Kulko* any less factually applicable to this case or allow us to bend the rules of personal jurisdiction for the county's benefit. As this court said in *Global Packaging, Inc. v. Superior Court* (2011) 196 Cal.App.4th 1623, 1630, quoting Justice Frankfurter: "'The history of American freedom is, in no small measure, the history of procedure.' [Citation.] By putting a person beyond the reach of a court in any state with which he has no significant ties, due-process limits on jurisdiction help to protect this freedom." Since *Kulko* is not distinguishable from this case, the result again is an order that was not just voidable but void. (*Peralta v. Heights Medical Center, Inc.* (1988) 485 U.S. 80, 86-87 [a judgment acquired in violation of due process rights is void and must be set aside regardless of the merits of the underlying case].)

---

[22]     Said the *Nosbisch* court: "Similarly, here, by agreeing that Wife could move with the children to Texas, it cannot be said that Husband purposefully derived any benefit from any activities relating to Texas. The fact that his children live in Texas is Husband's only contact with the state. These circumstances do not meet the due process requirement of 'minimum contacts' for personal jurisdiction in the family law context. [Citation.]" (*Nosbisch, supra*, 5 Cal.App.4th at p. 634.)

[23]     Riverside County does point to a portion of Briscoe's telephonic testimony in July 19, 2011 – after Michigan relinquished jurisdiction – that Briscoe is a "truck driver" who "often travels to California" and notes that he testified he "was in California maybe six times and each time it was a different excuse." But nothing in this statement indicates he was necessarily in California prior to 2008, much less 2000 or 1998. In fact, the argument inaccurately describes what the record reference actually shows. The statement from Briscoe's counsel cited in the record reference given by Riverside County was merely that Briscoe would "be in his truck" in order to pick up Marion. That's not exactly an admission Briscoe is employed as a long-haul trucker who often stops in California. We're talking about establishing jurisdiction here, not looking for clues to establish a betting line.

15

One more important wrinkle must be recognized in this case, though it is dicta: We hasten to add that, even assuming the absolute worst facts in terms of Briscoe's own conduct (let's assume Briscoe simply let Rascon and Marion live in California and sent no support from 1998 to 2008[24]), California was not without recourse to recoup the public assistance it was spending on Rascon and Marion. But it had to be done, as the saying goes, according to Hoyle. In making welfare payments to Rascon, as a matter of law Riverside County took an assignment of *Rascon's rights* under the 1999 Michigan judgment. (Welf. & Inst. Code, § 11477, subd. (a)(1)(i).) At any time thereafter, Riverside County could have proceeded against Briscoe *under the Michigan judgment*, including properly modifying it to provide a sum certain from Briscoe,[25] and enforced that judgment against Briscoe in Michigan. (See *State of Ohio v. Barron* (1997) 52 Cal.App.4th 62 [Ohio successfully sought recoupment of Ohio benefits paid to child in Ohio from California resident who appears to have had no Ohio contacts].) But Riverside County did not take such a course of action. Rather, the county simply allowed a California default judgment obtained by substitute service at an incorrect address to grow over the years.

3. *No Retroactivity 1998 to September 2008*

The supplemental briefing also gave the parties the opportunity to weigh in on the question of whether Briscoe's 2008 general appearance might somehow retroactively validate the 1998 judgment and 2000 modification order. In its supplemental briefing, Riverside County cites *Farmers etc. Nat. Bk. v. Superior Court* (1945) 25 Cal.2d 842 (*Farmers*) for the proposition that the 2008 general appearance

---

[24]     Even if Rascon concealed Marion from seeing his father, under *Comer, supra,* that would not estop the county from seeking reimbursement.

[25]     As in California, the Michigan judgment was subject to modification to conform to child support minimum guidelines, and the Rascon-Briscoe judgment could easily have been modified at such point that the actual physical custody of Marion became unequal. (See *Laffin v. Laffin* (Mich. App. 2011) 760 N.W.2d 738, 740 [noting that departure from Michigan child support guidelines requires finding application of guidelines would be unjust or inappropriate].)

16

cured any defects in jurisdiction back to 1998. Riverside County did not discover, however, that because *Farmers* was decided in 1945, it is no longer good law. The law on retroactivity changed in 1969.

In a tour de force opinion on the topic of retroactivity vis-à-vis a general appearance, the court in *Smith, supra,* 135 Cal.App.3d 543, explained that in 1969, the Legislature changed what had been a common law rule that allowed for retroactivity, as manifested in *Farmers* and in one of the cases *Farmers* relied on, *Security etc. Co. v. Boston etc. Co* (1899) 126 Cal. 418 (*Security*), to a rule that does not allow for retroactivity.

Ironically, the party contending for retroactivity in *Smith* relied on the very same passage from *Farmers* that Riverside County relies on now in its supplemental brief: "[A] general appearance made after entry of judgment has the effect of curing any defect arising from lack of jurisdiction due to the failure to serve or notify a person of the proceedings [citation]." (*Farmers, supra,* 25 Cal.2d at p. 846.) *Smith* directly confronted this statement, tracing its origins back to a common law rule articulated in *Security*. (See *Smith, supra*, 135 Cal.App.3d at pp. 547-548.) That common law rule was based on the idea that a defendant shouldn't be allowed to litigate an action to a conclusion, end up with an adverse result, and then turn around and argue for a lack of personal jurisdiction to get out of the adverse judgment. (*Id*. at p. 548.)

But, as the *Smith* court noted, over the years courts gradually lost sight of the original reason for the rule, and gave it a life of its own, giving rise to the unintended result that an inadvertent general appearance could result in the validation of a judgment entered *prior* to the general appearance – something that doesn't accord with the original reason for the rule. What thus "began as an aid to justice" morphed into a "automatic" rule that became a "trap" for unwary attorneys who might stumble into making a general appearance. (*Smith, supra*, 135 Cal.App.3d at p. 549.)

17

That was changed in 1969, when the Legislature rejected the common law rule in the Jurisdiction and Service of Process Act of 1969. Specifically, in 1969 the Legislature enacted section 410.50 of the Code of Civil Procedure, which equates a general appearance with the service of a summons. ("A general appearance by a party is equivalent to personal service of summons on such party.") The statute has remained unchanged since 1969.

The new statutory-based rule was easy to apply in *Smith*, the facts of which bear a remarkable analytic parallel to the case before us. In *Smith*, a wife filed a dissolution petition, and personally handed the summons and petition to her husband. That service, of course, violated California service-of-process law. (*Smith, supra*, 135 Cal.App.3d at p. 545, citing Code Civ. Proc., § 414.10.) Then, to make matters worse, her mother lied about who actually served the husband. The result was a default judgment, and a child support order by way of interlocutory and final judgments of dissolution. Five months went by, and the wife wanted to increase the support payments and hold her husband in contempt for not making the initial payments. The husband's attorney, by the inadvertence of asking for a continuance, made a general appearance. However, the trial court still set aside the husband's default and the judgments of dissolution, so the wife appealed, relying, as does the county here, on *Farmers*. (See *Smith, supra*, 135 Cal.App.3d at p. 547 ["Sandra relies on *Farmers, etc.* . . . ."].) The *Smith* court explained that to give effect to the wife's argument in favor of retroactivity would be to render Code of Civil Procedure section 410.50 "meaningless." (*Id.* at p. 554.) The statute means that a general appearance makes jurisdiction prospective, i.e., it "'continues through *subsequent* proceedings in the action.'" (*Id.* at p. 551, quoting Code Civ. Proc., § 410.50, subd. (b).)

In sum, Briscoe's attorney's general appearance in 2008 did not establish personal jurisdiction *retroactive* to 1998. It only established it subsequent to September 11, 2008. The trial court's invocation of section 3691 necessarily assumed that the

18

March 1999 default judgment, and 2000 modification order in the 818DA Riverside action, were either valid to begin with, or retroactively valid by the September 2008 general appearance.  As we have seen, neither assumption is tenable.  Therefore, any orders and consequent arrearages running from March 1999 to September 11, 2008 should have been set aside as a matter of law.

B.  *Post-2008*

After September 2008, this case presents a different series of problems. These arise out of the 1999 Michigan judgment which continued in effect until 2011. Briscoe contends that, because Michigan had exclusive jurisdiction over child support until 2011, there should be no arrearages under any California order or judgment for the 2008-2011 period.

We must first ask whether Riverside County's statutory right to seek welfare reimbursement is (or was) *in any way* affected by the 1999 Michigan judgment. Riverside County's right to seek reimbursement arises out of two separate statutes now in the Family Code, sections 4002 and 17402.  Both statutes are iterations of previous statutes, namely former Civil Code section 248 ("former section 248"), which changed to Family Code section 4002 effective January 1994, and former Welfare and Institutions Code section 11350 ("former section 11350"), which changed to Family Code section 17402 in 1999.[26]  We may note once again it is certainly true that *Rascon's* behavior in this case cannot estop Riverside County from seeking welfare reimbursement from Briscoe.  That much is made clear by our Supreme Court in *Comer, supra*, 14 Cal.4th 504.  Even a custodial parent who conceals a child from the other parent does not estop a government entity from obtaining reimbursement from the defrauded parent for public assistance given the custodial parent.  (*Id*. at p. 510.)  We may further observe that even if

---

[26]    See *Comer, supra*, 14 Cal.4th at page 521 ["section 4002 (which, effective January 1, 1994, replaced, without substantial change, former Civil Code section 248, enacted in 1955)"] and *County of Yuba v. Savedra* (2000) 78 Cal.App.4th 1311, 1317 ["In 1999, the Legislature . . . repealed sections 11350, 11350.1, 11475.1, and 11478.2, replacing them with . . . sections 17402, 17404, 17400, and 17406, respectively."].)

Rascon had brought her own independent action in California under the Family Code for child support, and *then* Riverside County obtained a later order for welfare reimbursement from Briscoe, Riverside County's order would supersede the previous order. (See *El Dorado, supra,* 182 Cal.App.3d at p. 703).

However, though Riverside County cannot be estopped by any welfare fraud Rascon may have committed, that doesn't mean its right to reimbursement is unfettered by other laws, as shown in *Yolo, supra*, 179 Cal.App.3d 647. *Yolo* was a case against a father who was himself on welfare at the time, but not physically impaired in a way that would "adversely affect his employability." (*Id.* at p. 651.) The county sought reimbursement under former section 11350 for a child with whom he did not have custody (the child was living in another household), and obtained a reimbursement order for welfare funds spent on that child. (*Ibid.*) The order was based on the father's *ability to earn*, despite the fact he was unemployed at the time. The *Yolo* court noted that the county could proceed under either former section 11350 or former section 248 (see *id.* at p. 650, fn. 3), and observed that former section 248 "subjects the county's reimbursement rights to limitations otherwise imposed by law." (*Id.* at p. 652.) The court then noted there was such a limitation imposed by other law in former section 11350 itself, which provided that reimbursement is limited by a parent's reasonable ability to pay during the welfare period. But then the court also noted that "reasonable ability" *includes* ability to earn, so the limitation did not affect the county in the case before it. (*Id.* at pp. 652-653.) As a second reason for its conclusion, the *Yolo* court noted that ordinary family law judgments "have long considered earning capacity in determining child support obligations." (*Id.* at p. 653.)

*Yolo* means we cannot ignore other laws, a subject which brings us to the maze of acronymized uniform state laws and federal law overlays bearing on cases like this one. Here is a brief review, aided by *In re Marriage of Gerkin* (2008) 161 Cal.App.4th 604, where another panel of this court threaded its way through the alphabet

20

maze: First came URESA, back in 1950, for the Uniform Reciprocal Enforcement of Support Act, which was engendered by the "'increasing mobility of the American population.' [Citation.]" (*Id*. at p. 611.) URESA was replaced in 1968 with RURESA, for Revised Uniform Reciprocal Uniform Enforcement of Support Act. (*Id*. at p. 612). Then, in the late 1980's, UIFSA, for Uniform Interstate Family Support Act, was promulgated as a replacement for RURESA. Finally, in 1997 California repealed RURESA and replaced it with UIFSA. (See *id*. at p. 612, citing Stats. 1997, ch. 194, §§ 1, 2.)

The progression to UIFSA is significant to this case, because UIFSA contemplates that there will be only one state which has jurisdiction over child support. Recently, in *In re Marriage of Haugh* (2014) 225 Cal.App.4th 963 (*Haugh*), our colleagues in Division One summarize the effect of UIFSA: "The 'cornerstone' of the UIFSA is the concept of 'continuing, exclusive jurisdiction,' codified in California as section 4909. (*Stone v. Davis* (2007) 148 Cal.App.4th 596, 600 (*Stone*).) 'UIFSA was designed to ensure that only one state at a time would have jurisdiction to make and modify a child support order. "[T]he central jurisdictional feature of UIFSA is the concept of continuing, exclusive jurisdiction. *Under UIFSA, a court that makes a valid child support order retains exclusive jurisdiction to modify the order as long as the requirements for continuing, exclusive jurisdiction remain fulfilled*. The court of another state may enforce a child support order registered in that state, but may not modify it unless the decree state has lost its continuing, exclusive jurisdiction."'" (*Id*. at p. 969, italics added, citing *Knabe v. Brister* (2007) 154 Cal.App.4th 1316, 1319.)

On top of UIFSA is federal legislation originating in 1994 known as FFCCSOA, for Faith and Credit for Child Support Orders Act, found in section 1738B. UIFSA and FFCCSOA are intended to work "in tandem" to "resolve interstate jurisdictional competition over support." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2015) ¶ 3:7, p. 3-5.) As the Rutter Group Family Law

21

treatise explains the duel operation of the two statutes, "When there are interstate ties (e.g., a nonresident spouse or child, or a preexisting out-of-state support order), a California court can exercise jurisdiction to establish, enforce or modify support orders *only* if consistent with the UIFSA and the FFCCSOA." (*Ibid*., italics added.)

California's adoption of the exclusive jurisdiction provision of UIFSA is found in section 4909. Subdivision (d) of the statute states: "A tribunal of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to this chapter or a law substantially similar to this chapter."[27] In its briefing, including its supplemental briefing, Riverside County makes no argument the Michigan judgment was issued pursuant to a law not substantially similar to California's. It does argue, however, that under section 4909, its March 1999 judgment takes precedence over Michigan's June 1999 judgment, and it was California that had exclusive jurisdiction over child support from the beginning, not Michigan.

---

[27] Here is section 4909 in its entirety:
"(a) A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child support order:
"(1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
"(2) Until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.
"(b) A tribunal of this state issuing a child support order consistent with the law of this state may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this chapter or a law substantially similar to this chapter.
"(c) If a child support order of this state is modified by a tribunal of another state pursuant to this chapter or a law substantially similar to this chapter, a tribunal of this state loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this state, and may only:
"(1) Enforce the order that was modified as to amounts accruing before the modification;
"(2) Enforce nonmodifiable aspects of that order; and
"(3) Provide other appropriate relief for violations of that order which occurred before the effective date of the modification.
"(d) A tribunal of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to this chapter or a law substantially similar to this chapter.
"(e) A temporary support order issued ex parte or pending resolution of a jurisdictional conflict does not create continuing, exclusive jurisdiction in the issuing tribunal.
"(f) A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a spousal support order throughout the existence of the support obligation. A tribunal of this state may not modify a spousal support order issued by a tribunal of another state having continuing, exclusive jurisdiction over that order under the law of that state."

We have already recounted the obstacles to Riverside County's got-there-first argument. Riverside County's service of process was not reasonably calculated to give Briscoe actual notice he was being sued in California for welfare reimbursement, plus the lack of minimum contacts in any event, mean any judgment obtained by Riverside County was void. Further, as we have also shown, the 1999 California judgment and 2000 order are *not* retroactive. That leaves the 1999 Michigan judgment as the only child support order valid from the beginning.[28]

*Crosby & Grooms, supra,* 116 Cal.App.4th 201, shows how exclusive jurisdiction works in a case of interstate mobility of parents and children. There, a couple got divorced in Idaho in 1996, though even before the settlement agreement was signed both of them had relocated out of state. The father went to California, while the mother and three children went to Oregon. (See *Crosby & Grooms, supra*, 116 Cal.App.4th at pp. 204-205.) By the end of 1996, the county in which the father resided registered the *Idaho* support order in California Superior Court, and five years later, in 2001, the county filed a motion to modify the child support order and establish that the county had "continuing exclusive jurisdiction" over child support. (*Id*. at p. 205.) The father appealed from the ensuing modification, which was based on California support guidelines, arguing that Idaho law should have been used to calculate the support order instead. Expounding on the idea of exclusive jurisdiction in one state, the *Crosby & Grooms* court said that had the father, mother and child "remained in Idaho," Idaho would "have retained exclusive jurisdiction, and a California court could enforce, but not modify, the order." (*Id*. at p. 206, quoting section 4952 and citing UIFAS, § 603, subd. (c).) However, "once" the parties "left Idaho and the Idaho support order was registered in California," the obligee parent could seek modification in this state. (*Id*. at p. 207.)

_____

28      Riverside County is correct that the January 1999 *ex parte* order could not vest Michigan with exclusive continuing jurisdiction because section 4909, subdivision (e) says so: "A temporary support order issued ex parte or pending resolution of a jurisdictional conflict does not create continuing, exclusive jurisdiction in the issuing tribunal."

Moreover – and this is why the obligor father lost his quest to have Idaho guidelines establish the support level – the *Crosby & Grooms* court determined that under UIFSA the substantive and procedural laws of the forum state should be followed. Quoting a comment to section 611 of UIFSA, the *Crosby & Grooms* court noted: "'[I]f the forum has modification jurisdiction because the issuing state has lost continuing, exclusive jurisdiction, the proceedings will generally follow local law with regard to modification of child support orders.'" (*Id.* at p. 208, quoting UIFSA, com. to § 611, p. 373.)

*Crosby & Grooms'* point about local law leads to a possible problem of whether Michigan might have lost jurisdiction at some point prior to January 2011. Under *Crosby & Grooms*, exclusive Idaho jurisdiction disappeared once all three parties, father, mother, and children, were out of Idaho. (*Crosby & Grooms, supra*, 116 Cal.App.4th at p. 207.) Here, Briscoe's 2010 Riverside action, filed in June 2010, contained a declaration under the Uniform Child Custody Jurisdiction and Enforcement Act[29] stating his address was "Pontiac, Michigan," though it did not give a street address. However, the Michigan order terminating jurisdiction effective February 8, 2011, noted that Briscoe had *already* relocated to Texas. It is a reasonable inference that this relocation did not happen exactly on February 8, so Briscoe was probably out of Michigan sometime prior. We would note in this regard that there is hardly a need for California to register its *own* support order, and that accords with the basic principle of UIFSA that there should be no *gap* in child support jurisdiction. We conclude that at the point Briscoe moved to Texas, California had jurisdiction, at least, to make its own child support order.

But that leads to another question: Did Briscoe waive any objection to California imposing its *own* child support order on him for the period after his counsel's 2008 general appearance? Answer: Under section 4909, California may have had

---

[29] Acronymized UCCJEA.

subject matter jurisdiction to *modify the Michigan judgment after 2008*, but it still did not have subject matter jurisdiction under section 4909 to impose its own order or judgment separate from the Michigan judgment. (*Haugh, supra,* 225 Cal.App.4th at p. 977 ["we believe, at least in California, a trial court may have subject matter jurisdiction to modify a child support order even though it does not have continuing, exclusive jurisdiction under section 4909 (or § 205 of the UIFSA)"]; accord, *Stone, supra,* 148 Cal.App.4th at p. 602 ["The other states addressing the matter have universally held that a written consent filed with the issuing court is required to transfer continuing, exclusive jurisdiction to another state."].) *If* Briscoe is indeed correct that Michigan had exclusive jurisdiction over child support until 2011, then there could not have been a valid waiver shown by his counsel's acquiescence to a modification of an existing *California* support order. Subject matter jurisdiction cannot be conferred by waiver, consent, or even stipulation. (*Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 896.)

The final question we face stems from Riverside County's argument the 1999 Michigan judgment isn't *really* a "child support order" after all. The argument primarily rests on a 1991 decision involving a Florida order held *not* to be a "child support order," in *In re Marriage of Hyon & Kirschner* (1991) 231 Cal.App.3d 449 (*Hyon & Kirschner*). *Hyon & Kirschner* began with a Florida dissolution judgment made when the two children of the marriage were both in foster care, apparently as a result of being placed there by the Juvenile and Domestic Relations Division of Florida Circuit Court, which was a juvenile dependency court.[30] (*Id.* at pp. 452-453.) While the Florida marital judgment required spousal support payments, it reserved "continuing jurisdiction over . . . the minor children, pending further action" of the Florida dependency court. (*Id.* at p. 453, italics added.) The payor parent moved to California, while his ex-wife and children remained in Florida. Later, when Florida instituted a RURESA action in

---

[30] See *In re Camm* (Fla. 1974) 294 So.2d 318 [noting Juvenile and Domestic Relations Division of Circuit Court adjudicated case of abandonment of children].)

25

California court to obtain child support and recoup welfare benefits, California brought an action under former section 11350 to obtain those requests. The trial court denied the welfare benefits recoupment request on the theory that the Florida judgment was really a "'zero dollars'" order. However, the appellate court held that the reservation of jurisdiction was not the "equivalent of a court order for zero child support." (*Id*. at p. 454.) Said *Hyon & Kirschner*: "Had the Florida court made a determination that respondent [the father] pay no child support, based on lack of need or inability to pay, it would have said so." (*Id*. at pp. 454-455.) Then, noting that under Florida law a court order was defined as "'ordering payment of a set or determinable amount of support money,'" the court noted that because the children were still in foster care, the Florida judgment was really the equivalent of a California bifurcation proceeding – one where, say, the status of marriage is dissolved but the court retains jurisdiction over custody and support issues. (*Hyon & Kirschner, supra*, 231 Cal.App.3d at p. 455, quoting Fla. Stats. Ann., § 409.2554(4) (West 1991 Supp.).)

We think Riverside County reads *Hyon & Kirschner* as standing for more than it does. Correctly read, *Hyon & Kirschner* stands for the common sense proposition that an order that does not *otherwise* provide for child support in any way, but in the process merely reserves jurisdiction over the issue of child support, is not a "child support order" under the Florida definition of child support order. That point, however, should hardly be a revelation. If one stands back and looks at the Florida order in *Hyon & Kirschner*, it was not *substantively* a child support order under anybody's law. It did not, for example, provide for any parental custody, or in any way make either parent responsible for the care the children for any period of time. *Hyon & Kirschner* does not advance the ball.

We should also note the obvious in connection with the reservation of jurisdiction argument made by Riverside County: No jurisdiction that is serious about providing for the care and support of children can do otherwise than reserve jurisdiction

26

over child support for the duration of a child's minority.  Under the law of California, for example, the duty to support a child continues until at least age 18.  (§ 3901, subd. (a) ["The duty of support imposed by Section 3900 continues as to an unmarried child who has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or attains the age of 19 years, whichever occurs first."].)  The same is true for Michigan law.  (See *Engelmeier v. Winne* (Mich. Ct. App., Sept. 20, 2012, No. 303092) 2012 WL 4210420 at p. 2 [nonpub. opn.] ["The standard language in a Uniform Child Support Order provides that the order 'continues until each child is age 18 or beyond 18, as provided in MCL 552.605b, whichever is later, but no longer than age 19 1/2.'"].)  Because modification of child support orders is always a possibility for changed circumstances arising out of things like changes in custody, needs of the child, or fluctuations in income, child support orders must necessarily reserve jurisdiction as a matter of course.

In the case before us, the 1999 Michigan judgment qualifies as a child support order under both California law and under Michigan law.  Section 17000, subdivision (b) provides that a "'Child support order' means any court order for the payment of a set or determinable amount of support by a parent *or a court order requiring a parent to provide for health insurance coverage*."  (Italics added.)  This definition is disjunctive.  It is enough that a parent be required to pay a sum or money *or* provide for health insurance.  The 1999 Michigan judgment, as we saw too many pages ago, certainly does that.  We would add that in California it is possible to have "zero dollar" child support orders when custody and incomes are in equipoise.  (E.g., *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1308 ["As we have noted, the support order going in was zero-zero.  Now, it was zero-zero precisely because both parents were working when the order was made, both parents made close to the same income when the order was made, and the 'time share' was equal."].)

27

Michigan has the same rule: A requirement a parent provide health insurance coverage for a minor child qualifies as a child support order, even if no money is changing hands. (See MCL § 552.602, subd. (gg) ["'Support order' means an order entered by the circuit court for the payment of support, *whether or not a sum certain*." (Italics added)].[31])

*Cook v. Bossenbroek* (Mich. Ct. App., Oct. 9, 2012, Nos. 297209 & 299594) 2012 WL 4800425 [nonpub. opn.] illustrates how an order like the 1999 Michigan judgment here can indeed be a valid child support order under California law. There, a uniform child support order was incorporated into a divorce judgment, the upshot being that "neither party had an obligation to pay monetary child support." (*Id*. at 2012 WL 4800425, p. 1.) The trial court voided the child support order as a matter of law, but the Michigan appellate court reversed. There were two reasons: First, if parenting time were to change, there would be a payment of money, which did not have to be in "a sum certain." (*Id*. at p. 2, citing MCL § 552.602, subd. (ff).[32]) And second, the mere fact the order mandated the father provide insurance coverage was enough: "Furthermore, the USCO [uniform child support order] *was a child support order because it mandated that defendant provide health insurance coverage for the minor children*, that defendant pay 80 percent of minor children's medical costs, and that plaintiff pay 20 percent of the minor children's medical costs." (*Id*. at p. 2, italics added.)

We view the clincher on this point to be the indicia in the 1999 Michigan judgment showing it was *intended* to be a child support order. We have already noted the several references in the document to Michigan child support statutes, including warnings that a payor having delinquencies in support could result in wage garnishment, plus the fact that, unlike *Hyon & Krischner*, it made both parents responsible for the child's real world support from the beginning. Further, we note the judgment grew out of

---

31     The provision used to be in subdivision (ff) of MCL 552.602.
32     See the footnote immediately above.

28

proceedings also intended to result in a child support order: While Rascon's January 1999 ex parte order did not *establish* jurisdiction in Michigan (see § 4909, subd. (e) [ex parte orders insufficient to establish exclusive jurisdiction]), her instigation of child support proceedings is still *evidence* of the nature of the action that eventually resulted in the 1999 July Michigan judgment to show that it really is a child support order under UIFSA. The ex parte order showed Rascon had instituted a *paternity* action to establish Briscoe's responsibility for the child, and it resulted in a judgment in which Briscoe did take responsibility for the child, by way of providing in-kind, if not formal monetary, support. (Cf. *Helgestad v. Vargas* (2014) 231 Cal.App.4th 719, 735 [discussing cases where "in-the-home support during a period of living with the children can count against an ongoing support order that is framed only in monetary terms"].)

Since the 1999 Michigan judgment really was a child support order and the 1999 California judgment was void, it follows that Michigan had exclusive jurisdiction over child support even after 2008, until such point as Briscoe left Michigan. *How long* Michigan retained jurisdiction after 2008, however, is, as we said, a matter for remand.

IV. DISPOSITION

To the extent the trial court denied Briscoe's request to vacate all prior California child support orders up September 11, 2008, the order is reversed with directions that all orders up to that time be vacated. To the extent the trial court denied Briscoe's request to vacate all prior California child support orders between September 11, 2008 and February 8, 2011, the order is reversed, with directions to conduct a hearing to ascertain precisely when Briscoe left Michigan to live in Texas, and to vacate all orders up to the point of his leaving. Any support arrearage accruing after he left Michigan under the last California order (the one made in 2008) should remain intact.

29

In the interests of justice, Briscoe will recover his costs on appeal from Riverside County. This entire matter could have been avoided if Riverside County had taken more care to properly serve Briscoe in Michigan in 1998.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

FYBEL, J.